## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**PRESTIGE FLORIDA PROPERTY
INVESTMENT LLC,**

Plaintiff,                                               **Case No.:**

v.

**GOLIATH VENTURES, INC.,** a Florida
corporation; **GOLIATH VENTURES, INC.,**
a Wyoming corporation, **CHRISTOPHER
DELGADO,** an individual; **JONATHAN
MASON,** an individual; **ERIC CLAYMAN,**
an individual; and **BLACKBLOCK
MANAGEMENT SOLUTIONS, LLC a/k/a
BLACKBLOCK MANAGEMENT SERVICES,**
a Florida limited liability company,

Defendants.
_____/

## **COMPLAINT**

Plaintiff, PRESTIGE FLORIDA PROPERTY INVESTMENT LLC

("Plaintiff"), by and through its undersigned counsel, brings this action against

Defendants GOLIATH VENTURES, INC., a dissolved Florida corporation,

GOLIATH VENTURES, INC., a Wyoming corporation that is a successor in

interest to the Florida corporation of the same name  (collectively hereinafter

"GVI" or "Goliath Ventures, Inc."), CHRISTOPHER DELGADO ("Delgado"),

JONATHAN MASON ("Mason"), ERIC CLAYMAN ("Clayman"), and

BLACKBLOCK MANAGEMENT SOLUTIONS, LLC a/k/a BLACKBLOCK MANAGEMENT SERVICES ("BMS"), and alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from a massive cryptocurrency Ponzi scheme orchestrated by Goliath Ventures, Inc., and its principals. Masquerading as a "Joint Venture" to evade federal and state securities registration requirements, Defendants solicited millions of dollars from investors, including Plaintiff by promising "guaranteed" monthly returns of 4% (48% annually) generated through purported cryptocurrency "liquidity pools."

2.      Contrary to their numerous representations of high liquidity and solvency, Defendants are now refusing to return Plaintiff's remaining principal investment of approximately $700,000.

3.      As the scheme began to collapse in late 2025, Defendants engaged in a concerted "lulling" campaign. Clayman, acting as both corporate counsel and a purported "partner," assured investors that GVI held over $100 million in excess reserves. Meanwhile, GVI's Chief Executive Officer, Delgado, issued and caused to be issued correspondence to investors blaming "legacy banking infrastructure" and "audit" requirements for GVI's failure to pay.

4.     Plaintiff brings this action to recover damages resulting from Defendants' violations of the Securities Exchange Act of 1934, the Florida Securities and Investor Protection Act, common law fraud, and civil conspiracy.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78(aa), and Rule 10b-5 promulgated thereunder.

6.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant GVI, when it was a Florida corporation, was headquartered in Orlando, Florida; Defendant GVI, as a Wyoming corporation, has its principal office in Orlando, Florida; and the agreements at issue were executed and managed in this District.

8.     The arbitration provision purportedly set forth in Clause 28 of the Joint Venture Agreement is unenforceable and void ab initio due to substantive unconscionability. Specifically, Clause 28.2 grants Defendant GVI the exclusive, unilateral right to appoint the arbitrator. This 'unilateral selection' mechanism deprives Plaintiff of a neutral forum and fundamental fairness. Plaintiff challenges

the validity of the arbitration agreement specifically, separate and apart from the fraud permeating the underlying contract.

## PARTIES

9.     Plaintiff is a limited liability company and an investor in GVI.

10.     Defendant GVI was a Florida corporation with its principal place of business at 189 S. Orange Ave, Suite 1800, Orlando, Florida 32801. Defendant GVI is now a Wyoming corporation with its principal place of business at 189 S. Orange Ave, Suite 1800, Orlando, Florida 32801.

11.     Defendant Delgado is the CEO and President of GVI and a resident of Florida. He is the signatory on the investment agreements.

12.     Defendant Mason is the Director of Partner Services for GVI and a resident of Florida. He acted as the primary solicitor for the investment.

13.     Defendant Clayman is an attorney licensed in Florida and the external corporate counsel for GVI. He actively participated in the scheme by vouching for the company's financials to investors.

14.     Defendant BMS is a Florida limited liability company purporting to be an "independent evaluator" for GVI.

## BACKGROUND FACTS

*The Solicitation, the "Guaranteed" 4% Return, and the Unregistered Securities*

15.    In or around November 2024, Defendant Jonathan Mason solicited Plaintiff to invest in GVI. Mason represented that GVI used "liquidity pools" in Bitcoin, Ethereum, and USDC cryptocurrencies to generate high-yield returns.

16.    During Mason's efforts to solicit Plaintiff's investment in GVI he provided information about the operations of the company and those involved with its management.

17.    Mason routinely spoke of Clayman's involvement with GVI as its "corporate counsel" and introduced Plaintiff to Delgado.

18.    In a conversation with Mason and Delgado in advance of investing in GVI Delgado told Plaintiff that GVI was a great success and that any principal invested was insured through Fidelity.

19.    Delgado knew that these statements were false and made them with the intention of inducing Plaintiff to invest with GVI.

20.    Mason represented to Plaintiff that a return of 4% per month was considered "low" for GVI's strategy and that the principal would remain liquid, accessible, and insured. Plaintiff learned that Mason was motivated by commissions paid by GVI based on the amount of investment secured by Mason.

21.    Based on these various representations and the people involved in GVI's operations Plaintiff decided to make an investment in GVI and on November 21, 2024, Plaintiff entered into a "Joint Venture Agreement" (the

"Agreement") with GVI. A true and correct copy of the Agreement is attached hereto as **Exhibit A.**

22.    On information and belief, Clayman drafted or approved the Agreement with the intent of soliciting investments in the "joint venture."

23.    At that time, Clayman either knew or should have known that the investment contemplated by the Agreement was not a joint venture but rather was a security that was required to be registered.

24.    On information and belief, Clayman either drafted or directed the preparation of the Agreement to pretend to be a joint venture for the purpose of soliciting investments in GVI through the Agreement which in turn would provide pecuniary benefit to Clayman.

25.    Clause 6.1.1 of the Agreement explicitly states: "The Partner shall be entitled to the following guaranteed monthly profits... Partners will receive a 4% monthly distribution rate from their liquidity account value."

26.    GVI never had a mechanism or investment in place to provide this guaranteed return and was aware of that fact when it executed the Agreement.

27.    GVI never had insurance, through Fidelity or otherwise, that insured the principal invested with GVI. GVI, Delgado, and Mason knew that GVI did not have insurance when they falsely represented to Plaintiff that GVI had insurance to induce Plaintiff to invest.

28.    GVI withheld the material fact that it had no mechanism or investment in place that provided a guaranteed 4% monthly return in and around the time that the Agreement was executed.

29.    Clause 6.3 of the Agreement guarantees return of Plaintiff's invested principal "in a timely manner."

30.    GVI never had the capacity to return all principal invested and was aware of that fact when it executed the Agreement.

31.    Delgado and Mason were also aware that GVI did not have the capacity to return all principal invested when they solicited Plaintiff to execute the Agreement and invest in GVI and withheld this material fact from Plaintiff.

32.    GVI, Delgado, and Mason withheld the material fact that GVI did not have the capacity to return Plaintiff's principal investment in and around the time that the Agreement was executed.

33.    Although titled a "Joint Venture," the Agreement was in reality an investment contract and meets all the hallmarks of a "security" under the landmark Supreme Court case of *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946):

    a.  Plaintiff invested money;

    b.  In a common enterprise (to wit: GVI's pooled funds);

    c.  With the reasonable expectation of profits (in fact, "guaranteed" profits in this instance); and

d. Those profits were to be derived solely from the entrepreneurial or management efforts of GVI and its employees and agents.

34.     At no point in time did Plaintiff play a role in directing business operations, investment opportunities, or other aspects of GVI's operations that led to "profits," nor was Plaintiff ever asked to play any role in GVI's operations or business.

35.     At no point in time did Plaintiff vote, or receive a request to vote, on investment opportunities being considered by GVI or other aspects of its business operations or "profit" generation.

36.     In fact, Plaintiff requested information about wallet IDs associated with its investment in GVI on numerous occasions but was denied that information.

37.     Thus, not only did Plaintiff not participate in any portion of the operations of GVI, but when it tried to be more engaged in those operations it was denied the opportunity.

38.     No registration related to the Agreement or Plaintiff's investment in GVI, i.e. these securities, was filed with the Securities and Exchange Commission or the Florida Office of Financial Regulation.

39.     Furthermore, Plaintiff was never consulted concerning any aspect of GVI's operations or investment activities.

40.     Regardless of the labels applied in Clause 3.4, the economic reality of the Agreement was that of a passive investment contract. While Clause 4.1.2 purported to grant Plaintiff the right to 'choose' liquidity pools, these rights were illusory.

41.     Plaintiff had no access to the private keys, no visibility into the proprietary algorithm controlling the funds, and no technical ability to audit the blockchain transactions. Plaintiff relied exclusively on the managerial and technical efforts of Defendants to generate the promised 4% monthly return.

42.     No exemption from federal and state registration requirements exists.

43.     Plaintiff initially invested $300,000. Lulled by the consistent payment of the 4% returns in early 2025, Plaintiff invested an additional $1,000,000 on July 30, 2025.

*The Sham "Audit" by BlackBlock Management Services*

44.     In August 2025, to allay growing investor concerns, GVI distributed an "Independent Evaluation Report" dated August 13, 2025, authored by BMS (the "BlackBlock Report"). A true and correct copy of the BlackBlock Report is attached hereto as **Exhibit B.**

45.     The Report falsely claimed that GVI "maintained an average collected balance of 115% or more of partner balances" and held "a sufficient position in reserves to satisfy any and all partner requests for withdrawal."

46. Upon information and belief, BMS is not a licensed independent public accounting firm, and the report was a fabrication designed to induce investors to maintain or increase their positions.

*The Collapse and Lulling Activities Continue*

47. In September 2025, Plaintiff requested a withdrawal of $600,000. Defendants delayed payment, eventually remitting the sum on October 16, 2025. Plaintiff retained a balance of approximately $700,000 with GVI.

48. In November 2025, GVI suspended all distributions.

49. On November 14, 2025, Plaintiff demanded that GVI return the $700,000 in capital that Plaintiff still had invested in GVI and close the account.

50. Mason confirmed the request to close the account and claimed to have sent a letter to GVI's attorney in an email that day. A true and correct copy of Mason's November 14, 2025 email is attached hereto as **Exhibit C**.

51. In the time since this demand GVI has consistently failed and refused to return Plaintiff's funds.

52. On November 17, 2025, Defendant Delgado sent a mass email blaming the suspension on "audit-driven recommendations" and promised distributions would resume shortly. A true and correct copy of this November 17, 2025 email is attached hereto as **Exhibit D.**

53.     On November 18, 2025, Plaintiff participated in a call with Defendant Eric Clayman. During this call, Clayman:

    a. Represented that he was personally an investor in GVI;

    b. Stated he had personally reviewed the balances and that GVI had either "$100-200 million dollars left over" or "hundreds of millions of dollars left over" in reserves; and

    c. Discouraged Plaintiff from pressing for a return of funds, citing the audit and banking delays.

54.     These statements by Clayman went well beyond those of an attorney relaying the position of his client, rather Clayman went on record about his own personal review of GVI's finances and personally vouched for their considerable reserves.

55.     The contents of this November 18, 2025 phone call were summarized in an email by Plaintiff and confirmed by Mason, who was on the call with Clayman. A true and correct copy of this November 18, 2025 email exchange is attached hereto as **Exhibit E.**

56.     These representations were materially false. GVI did not have excess reserves, and the "banking issues" were a pretext for insolvency.

*The "MSB" Excuse and Admission of Wallet Restrictions*

57.    On December 25, 2025, Defendant Delgado emailed Plaintiff stating that GVI was setting up a "Money Services Business" ("MSB") account and that distributions were halted until January 1, 2026. A true and correct copy of this December 25, 2025 email is attached hereto as **Exhibit F.**

58.    On January 19, 2026, Defendant Clayman issued a formal letter to "Partners and Directors" admitting that GVI had still not been approved for an MSB.

59.    More alarmingly, Clayman's January 19, 2026 letter admitted: "Goliath learned that its institutional wallets have been restricted. This restriction has been imposed citing violations of policy." A true and correct copy of this January 19, 2026 email is attached hereto as **Exhibit G.**

60.    As of the filing of this Complaint, Plaintiff's remaining principal of $700,000 has not been returned, and monthly distributions have ceased.

61.    All conditions precedent to the initiation of this action have been met or waived.

62.    Plaintiff has retained undersigned counsel and is obligated to pay them a reasonable fee in relation to their services in relation to this Lawsuit.

## COUNT I

*Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5*
*(Against GVI, Delgado, and Mason)*

63.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

64.    The Agreement constitutes an investment contract and thus a security under federal law and falls under the purview of 15 U.S.C. § 78.

65.    GVI, Delgado, and Mason each made untrue statements of material fact, including, but not limited to, guaranteeing a 4% monthly return on investment and return of the investment principal. Defendants also omitted material facts necessary to make the statements not misleading.

66.    These untrue statements of material facts and intentional withholding of material facts were done in advance of Plaintiff entering into the Agreement and were made with the intention of procuring Plaintiff's signing of the Agreement and investment of funds.

67.    Defendants knew that the material statements of fact described herein were false.

68.    Defendants knew that the material facts that they withheld as described herein were material to Plaintiff's decision as to whether to sign the Agreement and invest with GVI or not.

69.    Defendants acted with knowledge and intent, at all times aware that their scheme was fraudulent and constituted a Ponzi Scheme.

70.    Plaintiff relied on these misrepresentations and suffered damages as a result, including, but not limited to, loss of its $700,000 principal investment.

71.    Defendants each profited from their efforts to ensnare Plaintiff in the scheme. Mason received commissions based on inducing Plaintiff's investment. GVI directly received and exploited Plaintiff's invested funds, which included allowing Delgado to appropriate these funds for personal purposes.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for rescission of the Agreement and payment of damages in the amount of $700,000, interest from the date of investment, attorneys' fees and costs and such further and consistent relief as this Court deems just and equitable.

## COUNT II

*Violation of Section 12(a)(1) of the Securities Act of 1933*
*(Against GVI, Delgado, Clayman, and Mason)*

72.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

73.    Defendants GVI, Delgado, and Mason offered and sold securities, *i.e.* the Agreement and Plaintiff's subsequent investment of funds, to Plaintiff using

the means and instruments of interstate commerce including, but not limited to, emails and wire transfers.

74.    The Agreement and Plaintiff's subsequent investment of funds with GVI constituted a security, the sale of which involved the active participation of GVI, Delgado, Clayman, and Mason.

75.    No registration statement was in effect for these securities and therefore they were sold in violation of 15 U.S.C. § 77l.

76.    Plaintiff is entitled to rescission of its investment, recovery of the consideration paid, and interest from the date of investment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for rescission of the Agreement and payment of damages in the amount of $700,000, interest from the date of investment, attorneys' fees and costs and such further and consistent relief as this Court deems just and equitable.

## COUNT III

*Violation of Section 15(1) of the Securities Exchange Act*
*(Against Mason)*

77.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

78.    Mason is not registered as a broker dealer under Section 15(a) of the Securities Exchange Act, as codified at 15 U.S.C. §78o, or otherwise.

79.     Nevertheless, Mason engaged in activities exclusively within the purview of registered broker-dealers, including, but not limited to, marketing and inducing the sale of securities and receiving transaction-based compensation in relation thereto.

80.     As a result of those violations Plaintiff has been harmed and damaged in the amount of its lost investment and interest since the date of its investment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Mason, for rescission of the Agreement and payment of damages in the amount of $700,000, interest from the date of investment, attorneys' fees and costs and such further and consistent relief as this Court deems just and equitable.

## COUNT IV

*Violation of Fla. Stat. § 517.301 (Florida Securities and Investor Protection Act)*
*(Against GVI, Delgado, and Mason)*

81.     Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

82.     In connection with the sale of the investment to Plaintiff, Defendants engaged in a scheme to defraud and obtained money by means of untrue statements of material fact and the withholding of material facts.

83.     GVI, Delgado, and Mason each made these untrue statements and engaged in the act of withholding material information necessary for Plaintiff to fully evaluate the Agreement and its investment in GVI, as described herein.

84.     These untrue statements of material facts and intentional withholding of material facts were done in advance of Plaintiff entering into the Agreement and were made with the intention of procuring Plaintiff's signing of the Agreement and investment of funds.

85.     Each of Delgado, GVI, and Mason either knew or should have known that the material statements of fact described herein were false.

86.     Each of Delgado, GVI, and Mason knew or should have known that the material facts that they withheld as described herein were material to Plaintiff's decision as to whether to sign the Agreement and invest with GVI or not.

87.     Each of Delgado, GVI, and Mason acted with knowledge and intent, at all times aware that their scheme was fraudulent and constituted a Ponzi Scheme.

88.     Pursuant to Fla. Stat. § 517.211, Plaintiff is entitled to rescind the investment and recover the full amount paid, plus interest and attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for rescission of the Agreement and payment of damages in the amount of

$700,000, interest from the date of investment, attorneys' fees and costs and such further and consistent relief as this Court deems just and equitable.

## COUNT V

*Sale of Unregistered Securities (Fla. Stat. § 517.07)*
*(Against GVI, Delgado, Clayman, and Mason)*

89.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

90.    Defendants GVI, Delgado, Clayman, and Mason offered and sold securities, *i.e.* the Agreement, to Plaintiff in Florida.

91.    The Agreement and Plaintiff's subsequent investment of funds with GVI constituted a security, the sale of which involved the active participation of GVI, Delgado, Clayman, and Mason.

92.    The investments sold by Defendants were not registered with the Florida Office of Financial Regulation, nor were they exempt from registration.

93.    Defendants Delgado and Mason acted as unregistered agents in facilitating these sales.

94.    Pursuant to Fla. Stat. § 517.211, Plaintiff is entitled to rescind the investment and recover the full amount paid, plus interest and attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for rescission of the Agreement and payment of damages in the amount of

$700,000, interest from the date of investment, attorneys' fees and costs and such further and consistent relief as this Court deems just and equitable.

## COUNT VI

### Civil Conspiracy
### (Against all Defendants)

95.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

96.    Defendants GVI, Delgado, Mason, Clayman, and BMS reached an agreement to defraud investors.

97.    Each of these Defendants played an integral role in the scheme and engaged in different tactics at different times of the scheme to bring in investment dollars pursuant to securities and then to avoid the withdrawal thereof through the use and issuance of false and misleading reports concerning GVI liquidity and other excuses for the delay in investment return.

98.    This conspiracy resulted in the issuance of the fraudulent BlackBlock Report, the drafting of the deceptive "Joint Venture Agreement," and the coordinated "lulling" communications to prevent investors from withdrawing funds.

99.    Plaintiff suffered damages as a direct result of the overt acts taken in furtherance of this conspiracy.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for damages in the amount of $700,000, interest from the date of investment, and such further and consistent relief as this Court deems just and equitable.

## COUNT VII

*Fraudulent Inducement*
*(Against GVI, Delgado, and Mason)*

100.   Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

101.   Each of Delgado, GVI, and Mason made false statements concerning material facts - including, but not limited to the guaranteed 4% returns and a guarantee of the principal amount when they either knew or should have known they were false statements.

102.   Each of Delgado, GVI, and Mason made these statements to induce Plaintiff to invest $1,300,000 in the unregistered securities marketed and sold by GVI, Delgado, and Mason.

103.   Plaintiff justifiably relied on these statements in investing $1,300,000 in these unregistered securities and have suffered injury.

104.   As a result thereof, Plaintiff is entitled to the rescission of the Agreement and all provisions contained therein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for recission of the Agreement and damages in the amount of $700,000, interest from the date of investment, and such further and consistent relief as this Court deems just and equitable.

## COUNT VIII

*Violation of the Florida Deceptive and Unfair Trade Practices Act*
*(Against all Defendants)*

105.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

106.    This is an action pled in the alternative for damages, attorney's fees, and costs brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

107.    At all times material hereto, Plaintiff was a "consumer" and/or a legitimate business enterprise as defined by Fla. Stat. § 501.203(7) and is entitled to the protection of FDUTPA pursuant to Fla. Stat. § 501.211(2).

108.    At all times material hereto, Defendants were engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) by soliciting, advertising, offering, and providing services related to the management of cryptocurrency liquidity pools and the "Joint Venture" described herein.

109. FDUTPA declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

110. Defendants engaged in a pattern of deceptive, unconscionable, and unfair acts and practices, including but not limited to:

a. **Misrepresenting the Nature of the Transaction:** Explicitly representing in Clause 3.4 of the Agreement that the transaction "shall not be considered an investment product, investment offering or a security in any way whatsoever" to evade regulatory scrutiny and induce Plaintiff's confidence, while simultaneously operating what Defendants may now claim effectively functions as an unregistered security;

b. **False Guarantees:** Marketing and executing Agreements containing "guaranteed" monthly profits of 4% (Clause 6.1.1) and guaranteeing the safety of principal (Clause 6.3) when Defendants knew or should have known they lacked the capital structure, reserves, or legitimate profit-generation mechanisms to honor such guarantees;

c. **Deceptive "Audits":** Commissioning, authoring, and distributing the fraudulent "Independent Evaluation Report" by Defendant BMS (the

"BlackBlock Report") to mislead Plaintiff regarding the solvency of GVI and the safety of its funds; and

d. **Lulling Activities:** Engaging in a concerted campaign of deception regarding "banking infrastructure" delays and "MSB" applications to prevent Plaintiff from withdrawing funds while the scheme was collapsing.

111.   Defendants' conduct constitutes "unfair" acts because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and legitimate business enterprises.

112.   Defendants' conduct constitutes "deceptive" acts because their representations regarding the "guaranteed" returns, the status of the "Joint Venture," and the solvency of the company were likely to mislead a consumer acting reasonably under the circumstances and did in fact mislead Plaintiff.

113.   While Plaintiff asserts in Counts I through V that the Agreement functions as a security under the law, to the extent Defendants successfully argue that the Agreement is *not* a security—as they expressly represented in Clause 3.4 of the Agreement—Defendants are liable under FDUTPA for their unfair and deceptive trade practices in the marketing and sale of the "Joint Venture." Defendants should be estopped from asserting the transaction is a security to

avoid FDUTPA liability after inducing Plaintiff to sign the Agreement by representing it was *not* a security.

114.    As a direct and proximate result of Defendants' unfair and deceptive acts, Plaintiff has suffered actual damages in the amount of its unreturned principal investment of $700,000, plus interest.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants listed in this Count, jointly and severally, for damages in the amount of $700,000, interest from the date of investment, and such further and consistent relief as this Court deems just and equitable.

## COUNT IX

*Breach of Contract*
*(Against GVI)*

115.    Plaintiff realleges and incorporates Paragraphs 1 through 62 as if set forth fully herein.

116.    This is a claim pled in the alternative should the Agreement not be subject to rescission.

117.    The Agreement promised 4% monthly returns on investments.

118.    The Agreement promised that principal investments were insured and would be returned.

119.    Plaintiff still has a principal investment with GVI in the amount of $700,000.00.

120.    Plaintiff demanded GVI return that remaining principal investment on November 14, 2025, but to date no portion thereof has been returned to Plaintiff.

121.    Furthermore, GVI has failed and refused to pay the interest promised in the Agreement since October, 2025.

122.    Because these interest payments were not provided to Plaintiff as and when required by the Agreement Plaintiff is entitled to compounded investment returns.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against GVI, for damages in the amount of $700,000, plus four percent (4%) compounded monthly returns that have not been paid by GVI, and such further and consistent relief as this Court deems just and equitable.

Dated: February 18, 2026.

Respectfully submitted,

**Vincent A. Citro**
Florida Bar No. 468657
Primary Email: vcitro@losey.law
Secondary Email: docketing@losey.law
**David A. Meek II, Esq.**
Florida Bar No. 59314
Primary Email: dmeek@losey.law
Secondary Email: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 491-4842
*Attorneys for Plaintiff*