**GOLIATH VENTURES**

# JOINT VENTURE AGREEMENT

This agreement is dated ___11 / 21 / 2024___ (the "**Agreement**")

**BETWEEN:**

(1) **GOLIATH VENTURES INC.** an international business company incorporated and registered in Orlando, Florida – United States of America. ("**Company**" and "**GVI**"); and

(2) Name / Company name: ___Prestige Florida Property Investment LLC___

Nationality / Registered address: ___6000 Metro West Blvd. Suite 101 Orlando, FL 32835___

Passport / I.D. no. / ___█████___

("**Partner**"),

(Each a "**Party**" and collectively the "**Parties**").

**BACKGROUND:**

(A) The Parties to this Agreement wish to enter a joint venture with the purpose of together executing a particular project as detailed herein.

(B) This Agreement sets out the terms and conditions which shall govern the Parties' joint venture and their respective rights and obligations.

(C) The Parties understand that this is a joint venture that requires the effort, vote and contribution of both parties.

**IT IS AGREED** as follows:

## 1. INTERPRETATION

1.1. In this Agreement, unless the context otherwise requires, the following expressions have the following meanings:

| | |
|---|---|
| "**Account**" | refers to the account(s) which the Partner creates with GVI to Contribute to the Venture(s), |
| "**Bitcoin**" or "**BTC**" | is a decentralized digital cryptocurrency on the Bitcoin network which uses public-key cryptography in recording transactions; |

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

| | |
|---|---|
| "**Business Day**" | means any day of the week excluding Saturday and Sunday. |
| "**Confidential Information**" | means, in relation to the Company, all information which is disclosed to the Partner pursuant to or in connection with this Agreement (whether orally or in writing or any other medium, and whether or not the information is expressly stated to be confidential or marked as such) which may include, but is not limited to, the Company's data, documentation, processes, procedures, sensitive information, financial information and know-hows. |
| "**Contribution(s)**" | shall refer to the contributions made by **GVI** and/or the Partner under this Agreement. For clarity, this is the number of each cryptocurrency which they contribute to the Venture and not the USD value. |
| "**Ethereum**" or "**ETH**" | refers to the decentralized digital cryptocurrency which is native to the Ethereum blockchain-based platform with smart contract functionality. |
| "**Intellectual Property Right(s)**" or "**IPR(s)**" | refers to copyrights, trademarks and any other intellectual property right. |
| "**GVI**" | means GOLIATH VENTURES INC. The Company, and any member of its group (which includes any subsidiaries, sister companies or other entities engaged by the Company); |
| "**Venture**" | as defined in Clause 3; |
| "**Representative(s)**" | means, in relation to a Party, its employees, officers, directors, contractors, subcontractors, delegates, representatives and advisers. |
| "**Term**" | means the term of this Agreement as set out in Clause 13; |
| "**Uniswap**" | refers to Uniswap, a company that provides a cryptocurrency exchange; |
| "**USD**" | means United States Dollars; and |

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

"**USDC**"

refers to United States dollar coin, a digital stable coin pegged to the United States dollar.

1.2.  Unless the context otherwise requires, each reference in this Agreement to:

1.2.1. "writing", and any cognate expression, includes a reference to any communication effected by electronic (including email) or facsimile transmission or similar means.

1.2.2. a statute or a provision of a statute is a reference to that statute or provision as amended or re-enacted at the relevant time.

1.2.3. "This Agreement" is a reference to this Agreement and as amended from time to time; and

1.2.4. a Clause is a reference to a Clause of this Agreement.

1.3. The headings used in this Agreement are for convenience only and shall have no effect upon the interpretation of this Agreement.

1.4. Words imparting the singular number shall include the plural and vice versa.

1.5. Any words following terms such as including, include, for example, such as or any other similar expression shall not limit the sense of the words, description, definition, or phrase prior to those terms.

1.6. References to any gender shall include the other gender.

1.7. References to persons shall include corporations.

## 2.  COMMENCEMENT AND DURATION

2.1. This Agreement shall commence on the date it has been signed by both Parties and shall continue to be valid for an indefinite period until it has been terminated in accordance with Clause 14.

## 3.  JOINT VENTURE

3.1. In executing this Agreement, the Parties have agreed to enter a joint venture for the purpose of carrying out the particular project of utilizing their cryptocurrencies by making Contributions into liquidity pools which shall run on one or more exchanges (such as Uniswap) and shall involve the pairing of a combination of cryptocurrencies to exchanges wherein, in lieu of interest, an exchange pays exchange fees for the use of the pairing to create liquidity. Each liquidity pool that the Parties collectively decide to contribute to shall be considered a "**Venture**".

3.2. The Parties shall co-operate in relation to the Venture(s) in the way described in this Agreement.

3.3. The Parties shall decide on which Ventures to utilize in the way described in Clause 4 below.

3.4. Both Parties understand and agree that this is a joint venture requiring the co-operation of both Parties as described in Clause 4. This Agreement shall not be considered an investment product, investment offering or a security in any way whatsoever.

**GOLIATH VENTURES**

**LIQUIDITY PARTNER PLATFORM AND ACCOUNT**

3.5. For every specific cryptocurrency Contribution which is made by the Partner, subject to the required minimums, an Account will be created for the Partner. Such Account(s) will be reflected on monthly reports prior to partner distribution.

3.6. To register for an Account, the Partner must provide certain information about themselves as prompted by the Account registration form and process. The Partner represents and warrants that:

3.6.1. they are at least 18 years old (for individuals);

3.6.2. that all Contributions made in relation to this Agreement are completely legitimate and are not, whether directly or indirectly, the proceeds of any criminal or other illegitimate activities.

3.6.3. they understand that this is not an investment product or offering and that it is a genuine joint venture between the Parties.

3.6.4. they have not relied on information or advice from any other party including the Company to enter into this joint venture and that the Partner is entering into this joint venture based solely on its own analyses and decisions.

3.6.5. all required registration information they submit is truthful and accurate; and

3.6.6. they will maintain the accuracy of such information.

3.7. The Company is entitled to request any necessary information from the Partner for KYC purposes. The Company shall reserve its right to reject any registration request at its own discretion with or without providing a reason.

3.8. The Partner acknowledges that the detail and information they submit upon registration is the Partner's responsibility and is submitted at the Partner's own risk.

3.9. The Partner is responsible for keeping their Account details accurate and up to date. In the event of changes, the Partner is required to make written requests to the Company's IT department via email at help@goliathventuresinc.com Once the request has been received, KYC procedures may be conducted if necessary. Once the changes have been confirmed and proven, the changes shall be made.

3.10. The Partner is responsible for maintaining the confidentiality of their crypto account information and is fully responsible for all activities that occur under their account. The Partner agrees to immediately notify the Company of any unauthorized use or suspected unauthorized use of the Partner's Account or email or any other breach of security. The Company cannot and will not be liable for any loss or damage arising from the Partner's failure to comply with the above requirements.

3.11. This Agreement will remain in full force and effect while the Partner has Contributions remaining in an Account(s). The Company may terminate the joint venture, close the Partner's Account(s) and return the Partner's Contribution amounts (including any hyper-compounded amount) to the Partner at any time for any reason at the Company's sole discretion. The Partner agrees that any termination of their Account may involve deletion of user content associated with their Account. The Company

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

will have no liability whatsoever to the Partner for any termination of any Venture under this Agreement, including for termination of the Partner's Account (except that the Partner's funds will be returned).

## 4.  MANAGEMENT AND DECISION MAKING

4.1. The Parties will work together in deciding which liquidity pools to engage in using their Contributions. This will be done by following the below steps:

4.1.1. Firstly, GVI will run an initial analysis of its own and will choose several pools that it thinks are suitable in its sole discretion. GVI has completed these initial analyses and the pools which have been chosen are the following:

4.1.1.1.  Bitcoin.

4.1.1.2.  Ethereum.

4.1.1.3.  USDC.

GVI may at any point in time add or remove the pool options. This will be communicated to the Partner through email or through other suitable methods as decided by GVI.

4.1.2. The Partner will then consider and choose one or more of the pools listed above, or on the Portal, that it would like to participate in based on its own analyses.

4.1.3. The Partner will then contribute an amount towards that Venture, subject to the minimums mentioned in Clause 5 below. These minimums may be changed by GVI at any time. The Partner will send its Contribution to the relevant wallet address as detailed in Clause 5 below. GVI may notify the Partner of changes to wallet addresses through the Portal or via email from help@goliathventuresinc.com.

4.1.4. Finally, GVI will complete the pairing and the total Contribution will be engaged into the relevant pool(s) by GVI.

4.2.  The Parties understand and agree that any decisions relating to the Ventures and to the Contributions to be made under this Agreement shall be made by the Parties collectively as described in Clause 4. As such, each Party is making its own decisions and no Party is providing any form of financial advice to the other.

4.3.  GVI reserves the right to change or amend the liquidity pools or methods of operation for the Venture(s) at its own discretion - for example, where the Company has assessed the market conditions and decided that a different approach is more suitable, the partner authorizes GVI to make those decisions on their behalf.

4.4. In performing its obligations under this Agreement, each Party shall:

4.4.1. comply with all laws applicable to it; and

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

4.4.2. at all times act in accordance with the terms and conditions of this Agreement.

4.5. The Partner understands and agrees that it is responsible for ensuring that it complies with all statutes, regulations, byelaws, standards, codes of conduct and any other applicable laws and regulations that are relevant to the fulfillment of its obligations under this Agreement.

4.6. Both Parties shall be responsible for all their own costs and expenses incurred in connection with the Ventures and this Agreement and in executing its obligations under the same. The Parties shall not be entitled to charge the other Party for the same.

## 5. CONTRIBUTIONS

5.1. With respect to each Venture, the Partner shall contribute which is above the minimum amount required for that specific pool. The minimums are as follows:

5.1.1. **USD:** above a minimum amount of $100,000 USD.

5.2. In the event that GVI adds more liquidity pool options, it will notify the Partner of any minimums required.

5.3. The Parties agree that no Contributions shall be traded in U.S. regulated securities.

5.4. GVI will only be using its own funds and will not be collecting, pooling together, or using the funds of others for different crypto initiatives and/or special projects.

5.5. The Partner must send its Contribution amounts to the relevant and correct wallet address(es) as detailed below or may opt in to wire funds directly to, **GOLIATH VENTURES INC.**

5.6. **WIRE INFO: (DO NOT ACH)**
    **BANK NAME:** JP MORGAN CHASE
    **ACCOUNT NUMBER:** ▮▮▮▮▮▮▮
    **ROUTING NUMBER:** ▮▮▮▮▮▮
    **ADDRESS:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**GOLIATH VENTURES INC. CRYPTO ACCOUNT INFORMATION:**

| | |
|---|---|
| **Bitcoin** Wallet Address | **Wallet:** ▮▮▮▮▮▮▮▮▮▮▮<br><br>**Wallet Network:** BTC |
| **Ethereum** Wallet Address | **Wallet:** ▮▮▮▮▮▮▮▮▮▮▮▮<br><br>**Wallet Network:** ERC20 |
| **USDC** Wallet Address | **Wallet:** ▮▮▮▮▮▮▮▮▮▮▮▮<br><br>**Wallet Network:** ERC20 |

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

5.6. GVI shall not be liable for any actions of cryptocurrency exchange platforms and other third parties in relation to the Partner's cryptocurrency before it reaches GVI's wallet addresses as stated above.

5.7. No Party shall be deemed to be managing the other Party's cryptocurrencies in any way whatsoever. Furthermore, the Contribution from each Party shall be at all times considered under the ownership of that Party.

5.8. The Partner must send GVI an email notifying them of the Contribution made by the Partner, with the exact transaction hash number and a screenshot of the same, always making sure that the initial Contribution for each cryptocurrency is above the minimum required amount as detailed in Clause 5.1 above. GVI will not be liable in any way whatsoever if the Partner sends any cryptocurrency to the wrong wallet address. If the Partner sends an amount, less than the required minimum, then an Account will be created but not activated, so no profits will be paid out to the Partner until the minimum amount for the relevant cryptocurrency is met.

5.9. The Company reserves the right to change the payment options and methods mentioned above in Clause 5.5 from time to time. The Partner will be notified of any such change.

## 6.  DISTRIBUTION OF PROFITS

6.1. From any profits that are made, the distribution of profits will be as follows:

6.1.1. The Partner shall be entitled to the following guaranteed monthly profits generated by its Contributions, ("**Profit(s)**"):

6.1.1.1. **For Ethereum, Bitcoin, and USDC:** Partners will receive a **4%** monthly distribution rate from their liquidity account value.

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

6.1.3. GVI shall be entitled to any remaining profit.

6.2. If the Partner holds several Accounts (e.g. BTC Account, etc.), such percentages mentioned in Clause 6 shall be calculated for each Account separately and in no case shall values within such separate Accounts be calculated jointly.

6.3. The Company reserves the right to change the requirements for any valuation or minimum requirement mentioned in this Agreement to be based on USD value instead of USDC value, for example in the case where USDC becomes volatile or loses its peg to the USD. In addition, GVI only guarantees the principal amount held. In the event of "impermeant loss" GVI is only responsible for the initial principal and not the "compounded amount". In such case, all principal payments will be sent back to partners in a timely manner.

6.4. The Partner shall have the option to have its Monthly Profits paid out to them or to compound. In the event that compounding is chosen, Monthly Profits shall be added to the Partner's relevant Account total.

6.5. The Partner shall specify in the table below its relevant wallet address(es) to which it shall receive its Monthly rewards by pay-out and/or its withdrawals. Partner may also opt to receive payout via wire (wire option will automatically opt partner for monthly payout). The Partner shall also specify below whether it wishes to have its rewards for each Account compounded or paid out monthly.

**PARTNER WIRE INFO:**
**BANK NAME:** TD BANK
**ACCOUNT NUMBER/SWIFT:** ▮▮▮▮▮▮▮▮▮▮
**ROUTING NUMBER:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**ADDRESS:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| Wallet | Wallet Details | Hyper-compound or Monthly Pay-out |
|---|---|---|
| The Partner's **BTC** Wallet Address | Wallet: _____ <br> Wallet Network: BTC <br> If not applicable - note N/A | Hyper-Compound <br><br> Monthly Payout |
| The Partner's **Ethereum** Wallet Address | Wallet: _____ <br> Wallet Network: ERC20 <br> If not applicable - note N/A | Hyper-Compound <br><br> Monthly Payout |
| The Partner's **USDC** | Wallet: _____ <br> Wallet Network: ERC20 <br> If not applicable - note N/A | Hyper-Compound <br><br> Monthly Payout |

6.6. The Partner must ensure that the above information which is provided by the Partner is correct as the Company will not be liable or responsible in any way for any loss or damage as a result of incorrect information provided in the above table or by the Partner. Once the relevant cryptocurrency amount has been transferred by GVI to the above wallet address(es) and/or as specified by the Partner, GVI shall not be liable for any lost, stolen, hacked or otherwise misplaced cryptocurrency amounts. GVI shall also not be held responsible for any actions of cryptocurrency exchange platforms and any other third parties that facilitate such transactions.

6.7. Subject to the Company's consent, the Partner may later add another Account(s). To do so, the Partner will have to inform the Company by sending an email to help@goliathventuresinc.com and the Company will send a further agreement to the Partner to be signed. Any further agreements sent to the Partner by virtue of this Clause will be deemed supplemental and in addition to this Agreement and it will not be deemed a replacement of this Agreement.

6.8. Subject to Clause 6, after GVI has received into the relevant wallet address (as detailed in Clause 5) the cryptocurrencies sent by the Partner, in the event of a loss of the cryptocurrency, which is in the Account of the Partner, the Company will replace the same number of the relevant cryptocurrency (and not the value of the cryptocurrency). For the avoidance of doubt, the Company will in no way cover for the loss of value or market fluctuation of the value of any cryptocurrency.

6.9. The Company will maintain reporting on:

6.9.1. The quantity of the relevant cryptocurrency which the Partner transfers in or out of their Account.

6.9.2. The previous week's lowest market price of each cryptocurrency relevant to the Partner.

6.9.3. The percentages used for calculations referred to in Clause 6; and

6.9.4. The starting cryptocurrency quantity prior to the next weeks' activity.

## 7.  WITHDRAWING

7.1. In the event that a Party wants to withdraw all or a portion of the Contributions it has made under this Agreement, it shall send an email to the other Party and notify them of the same.

7.2. In order to withdraw all or a portion of the cryptocurrency in the Partner's relevant Account, the Partner will have to send a request to GVI at the following email help@goliathventuresinc.com

GVI will, within a reasonable time from the moment the notification is received, process the withdrawal(s). GVI will aim to return the Partner's relevant cryptocurrency amount within a 24 to 72-hour period. The withdrawal process may in some cases take longer.

7.3. The Partner shall not withdraw part of its Contribution such that less than the minimum amount required is left in the Account.

7.4. Any withdrawal amounts requested by the Partner shall be sent by GVI to the Partner's relevant wallet address as detailed in Clause 6.5 above.

7.5. Both Parties will have a say on when and if they want to withdraw their Contribution at any time.

7.6. The Company reserves the right to delay the withdrawal process mentioned above for up to 180 days in the event that the Company suspects:

7.6.1. any suspicious or malicious activities.

7.6.2. system hacks and/exchange delays.

7.6.3. unverified wallet addresses; or

7.6.4. other events which the Company believes gives rise to the need for further investigation.

## 8. CONFIDENTIALITY

8.1. Confidential Information includes all confidential information (however recorded or preserved) disclosed by the Company and/or its Representatives whether before or after the date of this Agreement, including:

8.1.1. the existence and terms of this Agreement or any other agreement entered into in connection with this Agreement.

8.1.2. any information that would be regarded as confidential by a reasonable businessperson relating to:

8.1.2.1. the business, assets, affairs, customers, clients, suppliers, or plans, intentions, or market opportunities of the Company; and

8.1.2.2. the operations, processes, product information, know-how, algorithms, designs, trade secrets or software of the Company.

8.1.3. any information, findings, data or analysis derived from Confidential Information.

8.1.4. any information that is developed by the Parties while carrying out this Agreement; and

8.1.5. any information or documentation that is identified as being of a confidential or proprietary nature.

8.2. The Partner undertakes to:

8.2.1. keep the Confidential Information secret and confidential.

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**GOLIATH**
**V E N T U R E S**

8.2.2. not use or exploit the Confidential Information in any way except for the purposes of this Agreement.

8.2.3. not use the Confidential Information for its personal benefit.

8.2.4. not directly or indirectly disclose or make available any Confidential Information in whole or in part to any person or third party, except as expressly permitted by the Company in writing or to the extent permitted by this Clause 8.

8.2.5. not copy, reduce to writing or otherwise record the Confidential Information in any way except as strictly necessary for the purpose of this Agreement. Any such copies, reductions to writing and records shall be the property of the Company.

8.2.6. not use, reproduce, transform or store the Confidential Information in an externally accessible computer or electronic information retrieval system or transmit it in any form or by any means outside its usual place of business.

8.2.7. keep a written record of:

8.2.7.1. any document or Confidential Information received from the Company in tangible form; and

8.2.7.2.  any copies made of the Confidential Information.

8.2.8. ensure that any document or other records containing Confidential Information shall be kept at its premises and shall not remove or allow those documents and records to be moved from those premises; and

8.2.9. apply strong security measures and degree of care to the Confidential Information as the Partner applies to its own confidential information, which the Partner warrants as providing adequate protection from unauthorized disclosure, copying or use.

8.3. The Partner may disclose the Confidential Information to its Representatives on the basis that it:

8.3.1. obtains written approval from the Company.

8.3.2. informs those Representatives of the confidential nature of the Confidential Information before it is disclosed.

8.3.3. procures that those Representatives comply with the confidentiality obligations under this Clause 8 as if they were the Partner and if the Company so requests, procure that any of them enters into a confidentiality agreement with the Company on terms equivalent to those in this Agreement.

8.3.4. keeps a written record of those persons; and

8.3.5. shall be liable for the actions or omissions of the Representatives in relation to the Confidential Information as if they were the actions or omissions of the Partner.

8.4. The Partner may disclose Confidential Information to the extent such Confidential Information is required to be disclosed by law, provided that, to the extent it is legally permitted to do so, it gives the Company as much notice of such disclosure as possible and, where notice of disclosure is not prohibited and is given in accordance with this Clause 8, it takes into account the reasonable requests of the Company in relation to the content of such disclosure.

8.5. The Company reserves all rights in its Confidential Information. No rights or obligations in respect of the Company's Confidential Information other than those expressly stated in this Agreement are granted to the Partner, or to be implied from this Agreement.

8.6. On termination of this Agreement, the Partner shall:

8.6.1. destroy or return all documents and materials (and any copies) containing, reflecting, incorporating or based on the Company's Confidential Information.

8.6.2. erase all the Company's Confidential Information from computer and communications systems and devices used by it, including such systems and data storage services provided by third parties (to the extent technically and legally practicable); and

8.6.3. notify the Company that it has complied with the requirements of this Clause, if it may retain documents and materials containing the Company's Confidential Information to the extent required by law. The provisions of this Clause shall continue to apply to any such documents and materials retained by the Partner.

8.7. Except as expressly stated in this Agreement, the Company does not make any express or implied warranty or representation concerning its Confidential Information.

8.8. The provisions of this Clause shall continue to apply after termination of this Agreement for an indefinite period.

8.9. Without prejudice to any other rights or remedies that the Company may have, the Partner acknowledges and agrees that damages alone would not be an adequate remedy for any breach of this Clause 9. Accordingly, the Company shall be entitled to immediately terminate this Agreement or to the remedies of injunctions, specific performance, or other equitable relief for any threatened or actual breach of this Clause by the Partner.

8.10. Nothing in this Agreement shall impose an obligation on the Company to extend this Agreement or to enter into any further agreements in relation to this Agreement, or an obligation to disclose any information (whether Confidential Information or otherwise) to the Partner.

## 9. INTELLECTUAL PROPERTY

9.1. The Company is the owner or the licensee of all its Intellectual Property Rights, including, but not limited to, its logo, trademarks, websites, software, coding etc. Those works are protected by intellectual property laws and treaties around the world. All such rights are reserved.

9.2. If the Partner breaches this Clause 9 or any other provisions in relation to the Company's Intellectual Property Rights, the Company shall be entitled to immediately terminate this Agreement and, in such a case, the Partner must, at the Company's option, return or destroy any copies of the materials the Partner have made.

## 10. ANNOUNCEMENTS

10.1. Subject to confidentiality, the Partner shall not make, or permit any person to make, any public announcement, communication or circular (announcement) concerning the existence, subject matter or terms of this Agreement, the wider transactions contemplated by it or the relationship between the Parties, without the prior written consent of the other Party.

GOLIATH
V E N T U R E S

10.2. Where an announcement is required by law or any governmental or regulatory authority (including, without limitation, any relevant securities exchange), or by any court or other authority of competent jurisdiction, the Party required to make the announcement shall promptly notify the other Party. The Party concerned shall make all reasonable attempts to agree the contents of the announcement before making it.

## 11. WARRANTIES

11.1. Each Party warrants that:

12.1.1. it has full power and authority to carry out the actions contemplated under this Agreement; and

12.1.2. all information, data and materials provided by it under this Agreement are accurate and complete in all material respects at the date on which they are given.

11.2. Except as expressly provided in this Agreement, there are no conditions, warranties, or other terms binding on the Parties with respect to the actions contemplated by this Agreement. Any condition, warranty or other term in this regard that might otherwise be implied or incorporated into this Agreement, whether by statute, law or otherwise, is, to the extent that it is lawful to do so, excluded by this Agreement.

## 12. INDEMNITY AND LIMITATION OF LIABILITY

12.1. The Partner shall indemnify the Company against all costs, liability, damages, loss, claims or proceedings arising out of the Partner's breach of any of the provisions of this Agreement and it shall reimburse costs and disbursements which are incurred, unless otherwise required by this Agreement.

12.2. Nothing in this Agreement shall limit or exclude the Partner's liability for fraud, fraudulent misrepresentation, or gross negligence.

12.3. If the Partner breaches any provisions concerning Confidential Information and/or Intellectual Property Rights, the Partner acknowledges and agrees that damages alone would not be an adequate remedy. Accordingly, the Company shall be entitled to immediately terminate this Agreement and to the remedies of injunctions, specific performance, or other equitable relief for any threatened or actual breach of either or both Company's Confidential Information and Intellectual Property Rights by the Partner.

12.4. The Company excludes all implied conditions, warranties, representations, or other terms except as expressly provided in this Agreement, and all conditions, warranties or other terms implied by statute or common law are excluded to the fullest extent permitted by law.

12.5. The Company will not be liable for damage that the Partner could have avoided by following GVI's instructions or for damage that was caused by the Partner failing to correctly follow instructions in this Agreement.

12.6. The Company will not be liable to the Partner for any loss or damage, whether in contract, tort (including negligence), breach of statutory duty, or otherwise, even if foreseeable, arising under or in connection with:

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**GOLIATH**
**V E N T U R E S**

12.6.1.  loss of profits, sales, business, or revenue.

12.6.2.  business interruption.

12.6.3.  loss of anticipated savings.

12.6.4.  loss of business opportunity, goodwill, or reputation; or

12.6.5.  any indirect or consequential loss or damage.

## 13. TERM AND TERMINATION OF AGREEMENT

13.1. This Agreement shall commence from the date of its signing by the Parties and shall be in place for an indefinite period until and unless it is terminated by the Parties in accordance with this Clause 13.

13.2. GVI has the right to immediately terminate this Agreement at any time by providing written notice to the Partner (which includes email).

13.3. The Partner shall have the right to terminate this Agreement immediately by giving written notice to the Company. If the Partner terminates this Agreement (or any Account of theirs) in the middle of a week, the profit for that week will not be paid to the Partner. GVI will aim to return the Partner's relevant cryptocurrency amount within a 24-hour period. The withdrawal process may in some cases take longer.

13.4. The Company may also immediately terminate this Agreement upon the following events:

13.4.1.  gross negligence, willful misconduct, or fraud of the Partner.

13.4.2.  the Partner commits a material breach of any term of this Agreement which is irremediable or (if such breach is remediable) fails to remedy that breach within a period of 14 days after being notified in writing to do so;

13.4.3.  if any warranty given by the Partner in Clause 11 of this Agreement is found to be untrue or misleading.

13.4.4.  if the Partner breaches any provisions of this Agreement; and/or

13.4.5.  in accordance with Clause 17.

13.5. The rights to terminate this Agreement given by this Clause 13 shall not prejudice any other right or remedy of both the Partner and the Company in respect of the breach concerned (if any) or any other breach.

## 14. EFFECTS OF TERMINATION

14.1. Upon termination, the Partner's Account(s) shall be terminated and all funds which the Partner is entitled to as per this Agreement shall be transferred to them.

14.2. The Partner understands that once their Account(s) has been terminated or once a termination notice has been received from either Party, the Partner no longer has the right to receive any profits or rewards from that point.

14.3. All clauses which, either expressly or by their nature, relate to the period after the expiry or termination of this Agreement shall remain in full force and effect after termination.

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**GOLIATH**
V E N T U R E S

14.4. Termination shall not affect or prejudice any right to damages or other remedy which the Company may have in respect of the event giving rise to the termination or any other right to damages or other remedy which the Company may have in respect of any breach of this Agreement which existed at or before the date of termination.

14.5. The termination shall not have any effect on the obligations already due between the Partner and the Company.

14.6. If the Partner, whose Account(s) have/has already been terminated, wants to reapply for another Account, the Company will have sole discretion in deciding whether or not to accept any such application.

14.7. Termination of this Agreement shall not affect any rights, remedies, obligations, or liabilities of the Parties that have accrued up to the date of termination, including the right to claim damages in respect of any breach of this Agreement which existed at or before the date of its termination.

## 15. TRANSFER OF ACCOUNT

15.1. The Partner is not permitted to transfer their rights of ownership over their Account(s) to a third party.

15.2. If the Partner passes away (in the case of individuals), the Partner's Account may be passed onto the inheritors of his/her estate, provided a copy of the Partner's death certificate, last will and testament is given along with a signed written request specifying the individual to take over the ownership of the Account signed by all inheritors of the Partner's estate. The Company will have sole discretion in deciding whether to request further information or documentation before making any decisions.

## 16. FORCE MAJEURE

16.1. The Company shall not be liable for any failure or delay in performing its obligations where such failure or delay results from any cause that is beyond its reasonable control. Such causes include, but are not limited to industrial action, civil unrest, fire, flood, storms, earthquakes, acts of terrorism, acts of war, governmental action or any other event that is beyond the reasonable control of the Company.

## 17. ASSIGNMENT AND OTHER DEALINGS

17.1. The Company, at its sole discretion, shall be allowed to assign, transfer, mortgage, charge, subcontract, delegate, declare a trust over or deal in any other manner with any or all of its rights and obligations under this Agreement without the need for the approval of the Partner.

17.2. The Partner understands and agrees that the Company may delegate, assign, contract or pass on tasks and obligations of the Company to any member of its group (which includes any subsidiaries, sister companies or other entities engaged by the Company).

17.3. The Partner shall not assign, transfer, mortgage, charge, subcontract, delegate, declare a trust over or deal in any other manner with any or all its rights and obligations under this Agreement without the prior written consent of the Company.

## 18. VARIATION

**GOLIATH**
**V E N T U R E S**

18.1. The Company may in its sole discretion amend this Agreement at any time by giving notice to the Partner. This notice may be given via email, or via other suitable means decided by the Company. If the Partner does not respond within one (1) weeks' time, the Partner will have been deemed to have accepted any amendments made.

## 19. NOTICES

19.1. A notice given to a Party under or in connection with this Agreement shall be in writing and sent to the Party at the address or email address given in this Agreement or as otherwise notified in writing to other Party.

19.2. Any notification sent by email will be deemed received on the date of transmission.

19.3. The Partner's information for all notices is as follows:

Legal name (of entity or person): Prestige Florida Property Investment LLC

Mailing Address: 6000 Metro West Blvd. Suite 101 Orlando, FL 32835

Phone: ████████████

Email: ██████████████

Passport or ID number: tbd

Country of issuance: USA

## 20. SEVERABILITY

20.1. If any provision or part-provision of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed deleted, but that shall not affect the validity and enforceability of the rest of this Agreement.

20.2. If any provision or part-provision of this Agreement is deemed deleted, the Parties shall negotiate in good faith to agree a replacement provision that, to the greatest extent possible, achieves the intended commercial result of the original provision.

## 21. NO PARTNERSHIP OR AGENCY

21.1. Nothing in this Agreement is intended to, or shall be deemed to, establish any partnership between any of the Parties, constitute any Party the agent of the other Party, or authorize a Party to make or enter into any commitments for or on behalf of the other Party except as expressly provided in this Agreement.

21.2. Each Party confirms it is acting on its own behalf and not for the benefit of any other person.

## 22. EXISTING ARRANGEMENTS

22.1. Nothing in this Agreement shall restrict either Party's right to continue to conduct its business activities or arrangements that existed before this Agreement.

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**GOLIATH**
V E N T U R E S

22.2. Nothing in this Agreement shall restrict either Party's right to enter joint ventures with other third parties in relation to any subject matter.

## 23. RIGHTS AND REMEDIES

23.1. The rights and remedies provided under this Agreement are in addition to, and not exclusive of, any rights or remedies provided by law.

## 24. WAIVER

24.1. A waiver of any right or remedy under this Agreement or by law is only effective if given in writing and shall not be deemed a waiver of any subsequent breach or default.

24.2. A failure or delay by a Party to exercise any right or remedy provided under this Agreement or by law shall not constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict any further exercise of that or any other right or remedy. No single or partial exercise of any right or remedy provided under this Agreement or by law shall prevent or restrict the further exercise of that or any other right or remedy.

## 25. COUNTERPARTS

25.1. This Agreement may be executed in any number of counterparts, each of which when executed shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement.

25.2. Transmission of an executed counterpart of this Agreement (but for the avoidance of doubt not just a signature page) by email (in PDF, JPEG or other agreed format) or DocuSign shall take effect as the transmission of an executed "wet-ink" counterpart of this Agreement. If this method of transmission is adopted, without prejudice to the validity of the agreement thus made, each Party shall on request provide the other with the "wet ink" hard copy original(s) of their counterpart.

25.3. No counterpart shall be effective until each Party has executed at least one counterpart.

## 26. THIRD PARTY RIGHTS

26.1 This Agreement does not give rise to any rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement.

26.2 The rights of the Parties to rescind or vary this Agreement are not subject to the consent of any other person.

## 27. ENTIRE AGREEMENT

27.1. This Agreement constitutes the entire agreement between the Parties and supersedes and extinguishes all previous discussions, correspondence, negotiations, drafts, agreements, promises, assurances, warranties, representations, and understandings between them, whether written or oral, relating to its subject matter.

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**GOLIATH** | **VENTURES**

27.2. For the avoidance of doubt, any further amendments made to this Agreement shall be considered supplemental and in addition to this Agreement and shall not be considered a replacement of this Agreement.

27.3. Each Party acknowledges that in entering into this Agreement, it does not rely on, and shall have no rights or remedies in respect of, any statement, representation, assurance, or warranty (whether made innocently or negligently) that is not set out in this Agreement.

27.4. The Partner agrees that it shall have no claim for innocent or negligent misrepresentation or negligent statement based on any statement or warranty in this Agreement.

## 28.  DISPUTE RESOLUTION

28.1. The Parties shall attempt to resolve any dispute arising out of or in relation to this Agreement through negotiations between their appointed representatives who have the authority to settle such disputes.

28.2. If the Parties fail to negotiate under Clause 29.1 within 1 month of receipt of a written invitation to negotiate, the Parties shall attempt to resolve the dispute in good faith through arbitration in accordance with Florida Law by an arbitrator to be appointed by the Company.

28.3. Pursuant to Clause 28.2, the arbitration hearing shall be in the English language and shall be held virtually or in person at a location to be decided by the Company. Regardless of where the arbitration hearing shall be held, the Agreement shall remain to be governed by the laws of Florida.

28.4. Both Parties shall pay their own respective arbitration fees and shall not be entitled to charge the other Party for the same.

28.5. The Parties hereby agree that the decision and outcome of the final method of dispute resolution under this Clause 28 shall be final and binding on both Parties.

## 29. GOVERNING LAW

29.1. This Agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the law of Florida, resolved by the Parties in accordance with Clause 28 above.

This Agreement has been entered into on the date stated at the beginning of it.

Signed by **CHRISTOPHER DELGADO** for and on behalf of **GOLIATH VENTURES INC.**

*Christopher Delgado*

11 / 21 / 2024

Signed by *Alex Reece*

Authorized signatory (if partner is a corporate entity)

11 / 21 / 2024

Doc ID: d859d224c76692228844c6a5e290da251f40bcad

**Dropbox** Sign                                                                                                    Audit trail

| | |
|---|---|
| Title | GOLIATH AGREEMENT - MONTHLY 4 PERCENT |
| File name | GVI AGREEMENT-MON...ENT(Updated).docx |
| Document ID | d859d224c76692228844c6a5e290da251f40bcad |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **11 / 14 / 2024**<br>15:18:16 UTC | Sent for signature to Prestige Florida Property Investment LLC (alexdreece@msn.com) and Christopher Delgado (christopher@goliathventuresinc.com) from mhernandez@goliathventuresinc.com<br>IP: 107.146.101.101 |
| **VIEWED** | **11 / 21 / 2024**<br>16:30:00 UTC | Viewed by Prestige Florida Property Investment LLC (alexdreece@msn.com)<br>IP: 71.42.14.204 |
| **SIGNED** | **11 / 21 / 2024**<br>18:32:35 UTC | Signed by Prestige Florida Property Investment LLC (alexdreece@msn.com)<br>IP: 71.42.14.204 |
| **VIEWED** | **11 / 21 / 2024**<br>18:34:56 UTC | Viewed by Christopher Delgado (christopher@goliathventuresinc.com)<br>IP: 107.146.101.101 |

**Dropbox** Sign                                                                              Audit trail

| | |
|---|---|
| Title | GOLIATH AGREEMENT - MONTHLY 4 PERCENT |
| File name | GVI AGREEMENT-MON...ENT(Updated).docx |
| Document ID | d859d224c76692228844c6a5e290da251f40bcad |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SIGNED**      **11 / 21 / 2024**      Signed by Christopher Delgado
                18:35:05 UTC            (christopher@goliathventuresinc.com)
                                        IP: 107.146.101.101

**COMPLETED**   **11 / 21 / 2024**      The document has been completed.
                18:35:05 UTC

Powered by **Dropbox** Sign