UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PRESTIGE FLORIDA PROPERTY        CASE NO. 6:26-cv-00392-GAP-RMN
INVESTMENT LLC,

      Plaintiff,

v.

GOLIATH VENTURES, INC., *et al.*,

      Defendants.

_____/

### ERIC CLAYMAN'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Eric Clayman and his family – like hundreds of others – are victims of a *ponzi* scheme perpetrated by Christopher Delgado.  Plaintiff knows this and admits as much in its complaint.  But in the face of this knowledge, Plaintiff attempts to rewrite history and create a narrative that Clayman knowingly participated in the fraud and should now be sued for losses Plaintiff allegedly suffered.  This narrative and the claims that flow from it fail.

At the outset, what is telling is what is omitted from the Complaint [ECF No. 1]:  Plaintiff never alleges that Clayman solicited Plaintiff when it chose to invest in Goliath in November 2024 or July 2025.  Clayman did not meet with, speak with, or otherwise engage with anyone acting on behalf of Plaintiff at these two critical moments.  Rather, the only allegations Plaintiff levels against Clayman around the

time of its investments are of the "on information and belief" variety and assert – in conclusory fashion – that Clayman was involved in the drafting of a document that evidenced Plaintiff's investment. These allegations do not result in liability against Clayman.

Even when there was an **actual** interaction between Plaintiff and Clayman, there is no actionable claim. That one interaction consisted of a phone call between Plaintiff's representative and Clayman on November 18, 2025. But by that date, Plaintiff admits it was already fully invested in Goliath, Comp. at ¶43; Goliath froze all investor withdrawals, *id.* at ¶48, and Goliath refused to return Plaintiff's funds, *id.* at ¶¶49, 51. And on that call, Clayman told Plaintiff it could ask Delgado to give Plaintiff its money back. *Id.* at **Exhibit E**.

The Court is well aware of the *Iqbal/Twombly* standard and the vast amount of caselaw it has generated since. At its core, the standard is intended to weed out those claims that may be conceivable but are not plausible, no matter the artful pleading, conclusory fluff, or overuse of adjectives and adverbs. Under this standard, the claims asserted against Clayman should be dismissed. At bottom, Plaintiff, Clayman and Clayman's family were victimized by Delgado. But Clayman was never a participant in Delgado's fraud and Plaintiff alleges no plausible claims to the contrary.

## <u>SUMMARY OF THE COMPLAINT AND ALLEGATIONS AGAINST CLAYMAN</u>

Beginning in late 2024, Jonathan Mason and Delgado solicited Plaintiff's investment in a cryptocurrency strategy.   *Id.* at ¶¶15–20.   Based on promises of insured principal, high liquidity, and "guaranteed" 4% monthly returns, Plaintiff ultimately invested $1.3 million. *Id.* at ¶¶21, 43.  Unbeknownst to Plaintiff, Goliath was a *ponzi* scheme.  *Id.* at ¶1.

As it relates to Clayman, Plaintiff's allegations center on two different time periods.  *First*, at some undisclosed time, Plaintiff alleges "on information and belief" that Clayman drafted the underlying agreement that evidenced Plaintiff's investment "for the purpose of soliciting investments in [Goliath] . . .  which in turn would provide pecuniary benefit to Clayman." *Id.* at ¶¶22-24.  There is no allegation as to when or what material changes – if any – Clayman undertook in the drafting of this document.

*Second*, after Plaintiff made its investment, Goliath suspended investor withdrawals and refused Plaintiff's demands for return of funds.  *Id.* at ¶¶48-51.  At that time, Plaintiff's representative had a phone call with Clayman on November 18, 2025.  *Id.* at ¶53.  On that phone call, Plaintiff alleges that Clayman (a) represented that he and his father were investors in Goliath, (b) represented that he personally reviewed the balances of Goliath and stated the company had "$100-200 million

dollars left over" and (c) "discouraged" Plaintiff from pressing for a return of funds due to audit and banking delays. *Id.*

This last point warrants attention. Plaintiff's allegation – Clayman discouraged Plaintiff from pressing for a return of monies – is contradicted by its own exhibit attached to the Complaint. Namely, **Exhibit E** to the Complaint is an email from Plaintiff's representative memorializing the call with Clayman. Far from being "discouraged", Plaintiff's representative admitted in that e-mail that Plaintiff could do as it pleased:

> [Clayman] told us if we did not want to be involved in it, *we simply needed to let [Delgado] know and ask for our funds back*."

*Id.* at **Exhibit E** (emphasis added).

## Relief Requested

Plaintiff's claims against Clayman should be dismissed. *First*, Plaintiff's claims under federal and state securities laws (Counts II and V) are not viable. Those laws apply to persons who sell or solicit the sale of securities and Plaintiff does not assert any factual allegations against Clayman that he engaged in the type of activity that could result in liability. *Second*, Plaintiff's claim for civil conspiracy (Count VI) fails because it lacks the required factual allegations that Clayman knowingly agreed and participated in Delgado's fraud, and in any event, is implausible. *Third*, Plaintiff's FDUPTA claim fails because it is devoid of the required factual allegations necessary to hold Clayman liable under that statute.

## A. *Applicable Standard*

Clayman does not state at length the legal standard governing a motion to dismiss, but just focuses on the following points relevant to this motion:

- The Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679.

- "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).

- "[W]hen the exhibits contradict the general and conclusory allegations of the [complaint], the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

- The Court may decline accepting the conclusory allegation "upon information and belief" that a party entered into a conspiracy without enough facts to make that statement plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).

## B. *Plaintiff's claim under Section 12(a)(1) of the Securities Act of 1933 fails*

Count II of the Complaint alleges a claim against Clayman under Section 12(a)(1) of the Securities Act of 1933. To state a claim, Plaintiff must allege (1) Clayman sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transmission facilities were used in connection with such sale or offer. 15 U.S.C. § 77l(a)(1).

Important here is the concept of "solicitation."  "[I]t is settled that [Section 12] imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988).  But liability for a Section 12(a)(1) violation also includes a "person who successfully *solicits* the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* at 642-43, 647 (1988) (emphasis added).

Solicitation requires an active act of urging or persuading an investor to buy or purchase a security.  *See Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991) (citing *Pinter*, 486 U.S. at 647).  A claim predicated on solicitation requires allegations that the defendant directly engaged the plaintiff to purchase the securities at issue.  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3rd Cir. 1989) ("purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the issuer liable . . ..'").  In other words, the focus is on the defendant's relationship with the plaintiff purchaser, *In re Gas Reclamation, Inc. Sec. Litig.*, 733 F. Supp. 713, 723-24 (S.D.N.Y. 1990), and merely being a "substantial factor" in causing the sale is insufficient to create liability, *Pinter*, 486 U.S. at 654.  Finally, "[m]ere conclusory allegations that a defendant solicited the sale of stock and was motivated by financial gain to do so are insufficient to state a claim under Section

12." *In re CNL Hotels & Resorts, Inc.*, No. 04-cv-1231ORL-311(RS, 2005 U.S. Dist. LEXIS 51501, at *5 (M.D. Fla. Sept. 20, 2005).

Under this legal framework, Plaintiff's Section 12 claim fails. Assuming *arguendo* the contract between Goliath and Plaintiff is a security, there are no allegations that Clayman was an "owner who passed title, or other interest in the security, to [Plaintiff] for value." *Pinter*, 486 U.S. at 642. Thus, the only pathway for Plaintiff to sue Clayman is that he solicited Plaintiff in the sale of securities. But Plaintiff does not allege that Clayman engaged directly with Plaintiff, urging or persuading it or its representatives to enter into contracts with Goliath in November 2024 and July 2025. Perhaps Plaintiff's attempt to create liability rests on the conclusory allegations that Clayman purportedly oversaw or drafted the underlying agreement at some unknown time. But that type of conduct does not satisfy any reasonable interpretation of the word "solicit" or the resulting caselaw since the *Pinter* decision. In sum, there are no well pleaded allegations to assess whether Plaintiff states a plausible claim against Clayman for violation of Section 12. Count II should be dismissed.

### C. *Plaintiff's claim under Fla. Stat. § 517.07 fails*

Count V of the Complaint alleges a claim against Clayman under *Fla. Stat. §* 517.07. For Clayman to be held liable under that statute, Plaintiff must allege and prove (1) the contracts between Plaintiff and Goliath were securities; (2) these

securities were not registered in Florida; and (3) Clayman sold such unregistered securities. *Fla. Stat.* §§ 517.07 & 517.211.

In assessing liability under *Fla. Stat.* § 517.211, the term "seller" applies not only to those who actually sell securities, but to those who solicit sales of securities. *See Beltram v. Shackleford, Farrior, Stallings, & Evans*, 725 F. Supp. 499, 500 (M.D. 1989) (defendant may be liable under § 517.211 if defendant solicits sale of securities). Courts interpreting § 517.07 claims have adopted the standard for "solicit" as set forth in *Pinter*. *See, e.g., In re Sahlen & Assocs., Sec. Litig.*, 773 F. Supp. 342, 372 n.40 (S.D. Fla. 1991) (concluding that conduct sufficient to constitute solicitation liability under Florida securities law is similar to that deemed sufficient to hold one liable as a seller under federal statute). Finally, similar to federal law, liability under § 517.07 requires "some personal activity and involvement in the sale." *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006) (affirming judgment in favor of business executive under § 517.211 because he did not personally participate in solicitation).

For the same reasons that Plaintiff's Section 12 claim fails, Plaintiff's § 517.07 claim fails. There are no allegations that Clayman was a seller of securities to Plaintiff or that Clayman solicited Plaintiff in connection with the sale of securities. The only attempt by Plaintiff to involve Clayman in its decision to enter into agreements with Goliath – the conclusory allegation that Clayman purportedly

oversaw or drafted the underlying agreement at some unknown point in time – is legally deficient and does not rise to the type of "personal activity and involvement in the sale" necessary to create liability. *Id.* In sum, there are no well pleaded allegations to assess whether Plaintiff states a plausible claim against Clayman for violation of § 517.07. Count V should be dismissed.

### D. *Plaintiff's civil conspiracy claim fails*

Count VI of the Complaint alleges a claim against Clayman for civil conspiracy. To state a claim for civil conspiracy, Plaintiff must allege "(1) an agreement between two or more parties, (2) to do an unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed in furtherance of it." *RMS Titanic, Inc v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 789 (11th Cir. 2014) (internal citation omitted). The heightened pleading standard set forth in *Fed. R. Civ. P.* 9 applies to a civil conspiracy claim. *See Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 LX 29751, at *17 (S.D. Fla. Sep. 24, 2018).

Plaintiff's civil conspiracy claim against Clayman fails. At the outset, although Plaintiff alleges in conclusory fashion that Clayman and others "reached an agreement to defraud investors", the Complaint is devoid of any specific factual allegations of when or how Clayman entered into this agreement with the other defendants to defraud Plaintiff. Moreover, considering Plaintiff's admission that

Clayman and his family also invested in Goliath, it is implausible to allege that Clayman was simultaneously defrauding himself and his family while defrauding others. *See Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 LX 29751, at \*18-19 (S.D. Fla. Sep. 24, 2018) ("Aside from . . . conclusory and unsupported assertions of an agreement, nowhere in the allegations . . . do Plaintiffs provide any factual predicate to demonstrate that Itau 'agreed' with other defendants to defraud").

Finally, the only well pleaded factual allegations referring to Clayman that Plaintiff can perhaps point to in support of this claim – the November 18, 2025 call – do not help. According to Plaintiff, by that time, Goliath was falling apart and refusing to pay investors, including Plaintiff. On the call – in Plaintiff's own words – Clayman did not discourage Plaintiff from taking action; to the contrary, Clayman told Plaintiff's representative that if they wanted to exit Goliath, they were free to do so: "[Clayman] told us if we did not want to be involved in it, *we simply needed to let [Delgado] know and ask for our funds back*." Compl. at **Exhibit E**.[1]  In sum, there are no well pleaded allegations that Clayman entered into a civil conspiracy with the other Defendants, and the only factual allegations Plaintiff makes are contradicted by its representative's contemporaneous words attached to the

---

[1] Also omitted from Plaintiff's November 2025 narrative are allegations that Plaintiff could have extricated its funds from Goliath but for statements Clayman made on the call. Put another way, if Goliath was financially exhausted by November 2025 – which is the inference to be drawn from Plaintiff's allegations that Goliath stopped honoring withdrawal requests by that time - Plaintiff could never have recovered its remaining investment regardless of what Clayman said on the call.

Complaint.  Plaintiff's claim lacks the requisite factual allegations, and in any event, is implausible.  Count VI should be dismissed.

### E.  *Plaintiff's FDUPTA claim fails*

Count VIII of the Complaint alleges a claim against Clayman for violation of FDUPTA which bars "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Fla. Stat.* § 501.204(1).  A FDUTPA claim consists of three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016).

FDUTPA only "applies to unfair or deceptive acts or practices in trade or commerce," *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019), and "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property . . . or thing of value." *Fla. Stat.* § 501.203(8).  "Despite this broad definition, conduct by a law firm or lawyers during the provision of legal services is not 'trade or commerce' and is instead the exercise of a legal remedy." *Kurlander v. Kaplan*, No. 8:19-cv-00742-T-02AEP, 2019 U.S. Dist. LEXIS 141877, at *27 (M.D. Fla. Aug. 21, 2019).  Finally, when a FDUPTA claim sounds in fraud, courts have held the claim must be pleaded in conformance with the particularity standard set forth in *Fed. R. Civ. P.* 9(b).  *See Inouye v. Adidas Am., Inc.*, No. 8:22-cv-416-VMC-

TGW, 2023 U.S. Dist. LEXIS 35990, at *9 (M.D. Fla. Mar. 3, 2023) (citing cases and holding FDUPTA claim based on fraudulent conduct must be pleaded with particularity).

Plaintiff's FDUPTA claim against Clayman fails.  No matter the pleading standard employed, the Complaint is devoid of any allegation that Clayman "advertis[ed], solicit[ed], provid[ed], offer[ed], or distribut[ed], whether by sale, rental, or otherwise, of any good or service, or any property . . . or thing of value" to Plaintiff.  *Fla. Stat.* § 501.203(8).  To the extent Plaintiff relies on its conclusory allegations that as legal counsel to Goliath, Clayman drafted at some unknown time the form contract that Plaintiff executed, such conduct is not considered trade or commerce under FDUPTA.  *See Kurlander*, No. 8:19-cv-00742-T-02AEP, 2019 U.S. Dist. LEXIS 141877, at *27 (M.D. Fla. Aug. 21, 2019) (legal services do not fall under FDUPTA).  Finally, the entire universe of allegations directed at Clayman fail to state a plausible claim under FDUPTA.  As discussed above, in the only direct interaction Plaintiff had with Clayman, he did not "discourage" Plaintiff from withdrawing its funds from Goliath.  To the contrary, Plaintiff's own notes make clear that Clayman told Plaintiff it could withdraw its funds – if that were even possible by November 2025 – from Goliath.  Count VIII should be dismissed.

## Conclusion

The United States recently arrested Delgado and charged him with crimes in connection with Goliath.  But Plaintiff did not invest in Goliath because of any interaction it had with Clayman.  And when it did interact with Clayman – at a time the *ponzi* scheme was collapsing – Plaintiff admits "[Clayman] told us if we did not want to be involved in it, we simply needed to let [Delgado] know and ask for our funds back."  The claims against Clayman should be dismissed.

WHEREFORE, Clayman requests the Court enter an Order dismissing the claims asserted against him, award his attorney's fees and costs to the extent allowed by statute and grant such other relief the Court deems just and proper.

## Local Rule 3.01(g) Certificate

Prior to the filing of this Motion, undersigned counsel certifies that he conferred with David Meek, counsel for Plaintiff, on April 8, 2026, by telephonic conference in an attempt to resolve the issues raised in this filing.  The parties were unable to come to resolution.

Dated: April 10, 2026

**PHANG & FELDMAN, P.A.**
*Counsel for Eric Clayman*
One Biscayne Tower, Suite 1600
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 614-1223 // Fax: (305) 614-1187
Secondary Email: service@katiephang.com

By: */s/ Jonathan S. Feldman*
JONATHAN S. FELDMAN, ESQ.
Florida Bar. No. 12682
Primary Email: feldman@katiephang.com

### Certificate of Service

**I HEREBY CERTIFY** that on April 10, 2026, a true and correct copy of this filing was electronically filed served via CM/ECF upon all counsels of record and those parties required to receive e-mail service.

By: */s/ Jonathan S. Feldman*
JONATHAN S. FELDMAN, ESQ.
Florida Bar. No. 12682