## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

PRESTIGE FLORIDA PROPERTY
INVESTMENT LLC,

     Plaintiff,

v.                                             CASE NO. 6:26-cv-00392-GAP-RMN

GOLIATH VENTURES, INC., et al.,

     Defendants.

_____/

## DEFENDANT JONATHAN MASON'S MOTION TO DISMISS
## COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

Defendant Jonathan Mason submits this memorandum of law in support of his motion to dismiss the Complaint.

Plaintiff alleges that Christopher Delgado orchestrated a cryptocurrency scheme that defrauded hundreds of investors. The Complaint names Mason as a defendant in eight counts, but it never alleges what Mason knew. It never places him inside the decisions that made GVI fraudulent. It never explains how Mason; who had no role in GVI's financial management, no access to its records, and no part in

any post-collapse communication to investors; could have known the representations he conveyed were false. Instead, the Complaint resorts to impermissible group pleading, bundling Mason together with Delgado and GVI in collective allegations that recite legal conclusions in place of the particularized facts that Rule 9(b) demands.

**Mason and his family lost approximately $7,000,000 of their own money in the same scheme Plaintiff alleges Delgado orchestrated.** The Complaint places Mason at the center of a fraud he neither knew about nor caused, and of which he was himself a victim.

The Complaint's own exhibits tell a different story. Every post-collapse communication to investors came from Delgado or Clayman, not Mason. When Plaintiff demanded its money back, Mason confirmed the request that same day and personally contacted GVI's attorney to initiate the account closure process. Under the controlling pleading standards of this Circuit, what the Complaint alleges is not enough to sustain a single count against Mason, let alone eight. The claims against Mason must be dismissed.

## SUMMARY OF THE COMPLAINT AND ALLEGATIONS AGAINST MASON

The Complaint alleges that Mason served as GVI's "Director of Partner Services" and was "motivated by commissions paid by GVI based on the amount of

investment secured by Mason." Compl. ¶¶ 12, 20. Those allegations, taken on their face, describe a person acting in a representative capacity on GVI's behalf, earning a commission for securing investment into a product GVI created, owned, and controlled. They do not describe a person with knowledge of GVI's internal finances, operational decisions, or the true state of its business. The Complaint does not allege Mason had access to GVI's financial records, attended any internal GVI meetings, had any role in GVI's investment strategy or operations, received any communication revealing the fraudulent nature of the scheme, or maintained any desk, equipment, or operational presence at GVI. Plaintiff invested $300,000 in November 2024 and an additional $1,000,000 on July 30, 2025. Compl. ¶¶ 21, 43. The Complaint is entirely silent on Mason's role in connection with the second and larger transaction.

The Complaint also does not attribute the specific insurance misrepresentation to Mason. Paragraph 18 states that Delgado told Plaintiff the principal was "insured through Fidelity." Compl. ¶ 18. Mason is separately alleged at paragraph 20 to have represented the principal would be "insured," but the Complaint identifies no specific words Mason used, no date or context for that statement, and no basis for the inference that Mason knew whatever he said was false. The complaint attributes the fraudulent insurance representation with specificity to Delgado, and attaches a

vague echo of it to Mason without any of the particularity that fraud pleading requires.

The Complaint's post-collapse narrative is equally instructive. Every lulling communication identified in the Complaint was sent by Delgado or Clayman, not Mason. Delgado sent the November 17 and December 25, 2025 mass emails. Compl. Exs. D, F. Clayman authored the January 19, 2026 letter and made the November 18, 2025 representations about GVI's reserves. Compl. ¶ *53*. Mason appears in the post-collapse narrative exactly once: his November 14, 2025 email confirming Plaintiff's withdrawal request. "I sent a letter to our attorney," he wrote. "It's a different process for closing an account. They will draft up a letter closing the account. Once I get that I'll send it over to you to sign." Compl. Ex. C. That is the conduct of someone who believed the arrangement was legitimate and worked to honor his client's request. It is not the conduct of a knowing co-conspirator.

## APPLICABLE LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court first identifies conclusory pleadings not entitled to an assumption of truth, then determines whether the remaining well-pleaded allegations plausibly give rise to relief. *Id.* at 679.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id* at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). When exhibits attached to a complaint contradict its general and conclusory allegations, "the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Counts I, IV, VI, VII, and VIII sound in fraud and are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be "stated with particularity." Fed. R. Civ. P. 9(b). In the Eleventh Circuit, a fraud complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Robert Garfield v. NDCHealth Corporation*, 466 F.3d 1255, 1262 (11th Cir. 2006). In cases involving multiple defendants, Rule 9(b) further requires the complaint to plead sufficient facts to "inform each defendant of the nature of [its] alleged participation in the fraud." *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788 (11th Cir. 2016). A complaint that attributes fraudulent

conduct jointly to a group of defendants "fails to apprise each defendant of its involvement in each allegedly fraudulent activity." *Id.* at 789.

Scienter must be established "with respect to each defendant and with respect to each alleged violation." *Scientific-Atlanta, Inc. v. Rochelle Phillips*, 374 F.3d 1015, 1017-1018 (11th Cir. 2004). Section 10(b) requires either intent to deceive or severe recklessness, defined as conduct involving "not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Thompson v. Relationserve Media, Inc.*, 610 F.3d 628, 634 (11th Cir. 2010). Counts II and V are strict liability provisions not sounding in fraud and are evaluated under the basic plausibility standard. Count III presents a pure question of statutory construction.

## **ARGUMENT**

The Complaint's eight counts against Mason fail for six independent reasons: the fraud-based counts never identify what Mason knew, when he knew it, or how he could have known it, amounting to nothing more than impermissible group pleading (Counts I and IV); the fraudulent inducement count pleads the wrong knowledge standard and contains no allegations as to the second and larger investment (Count VII); Section 15(a) of the Exchange Act provides no private right of action and Mason is not a broker-dealer subject to independent registration (Count

III); the civil conspiracy allegation is conclusory, implausible on the face of the Complaint's own allegations, and directly refuted by Plaintiff's Exhibit C (Count VI); the solicitation counts contain no allegations whatsoever as to the second investment and fail to allege direct and active solicitation as to the first (Counts II and V); and the FDUTPA count sounds in fraud and fails Rule 9(b)'s particularity requirement (Count VIII).

## I. Counts I and IV Must Be Dismissed Because the Complaint Engages in Impermissible Group Pleading and Never Identifies What Mason Knew, When He Knew It, or How He Could Have Known It.

Counts I and IV rest on a single impermissible inference: because GVI was a Ponzi scheme and Mason referred investors to it, he must have known it was fraudulent. Rule 9(b) exists to prevent that logical leap from substituting for particularized factual allegations. The Complaint never separates Mason from the scheme it attributes to Delgado. It does not allege Mason had access to GVI's financial records, attended any internal meeting where the fraud was discussed, received any communication revealing the scheme's true nature, or had any role beyond conveying representations that GVI itself made in its own Agreement. What the Complaint offers instead are collective accusations. Rule 9(b) does not permit that.

**A. The Complaint's Collective Pleading Fails to Apprise Mason of His Alleged Participation in the Fraud.**

Throughout Counts I and IV, the Complaint consistently attributes misconduct collectively to "GVI, Delgado, and Mason" without distinguishing what Mason specifically knew or did. See Compl. ¶¶ 65, 83, 85, 87. In a case involving multiple defendants, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997); see also *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 791 (11th Cir. 2016). Bundling Mason with GVI and Delgado without identifying the specific factual basis for his alleged knowledge "fails to apprise each defendant of its involvement in each allegedly fraudulent activity" and requires dismissal. *Transatlantic*, 666 F. App'x at 790.

This deficiency was identified and rejected in directly analogous circumstances in *Honig v. Kornfeld*, 339 F. Supp. 3d 1323 (S.D. Fla. 2018), a case involving external sales agents who used an employer's scripts to sell fraudulent Ponzi scheme investments. The court held that "mere allegations that the External Sales Agent Defendants utilized the false and misleading [employer] sales script, and that the Defendants knew or should have known that the [employer] investments were fraudulent are insufficient." *Id.* at 1344. The court further observed that the employer's efforts to conceal the scheme from the agents actually undercut any inference of actual knowledge on the agents' part. *Id.* The Complaint here alleges

Delgado orchestrated and controlled the fraud. Compl. ¶ 1. It does not allege Mason had any window into Delgado's concealment of GVI's true financial condition.

**B. The Complaint Fails to Plead Mason's Scienter with Particularity Under Either the Federal or Florida Standard.**

The Complaint's scienter allegations against Mason consist of nothing more than the collective legal conclusion that he "knew or should have known" the representations were false. Compl. ¶¶ 67, 85, 87. These conclusions are entitled to no presumption of truth. *Iqbal*, 556 U.S. at 681. The Complaint does not identify what information Mason possessed that would have revealed the scheme to be fraudulent, what internal GVI communications he was privy to, or what facts he independently knew beyond what GVI itself represented in the Joint Venture Agreement.

The Eleventh Circuit addressed a similar situation in *United States v. Parker*, 839 F.2d 1473 (11th Cir. 1988). Although decided in the criminal mail fraud context, the Eleventh Circuit's reasoning applies with equal force here: the court reversed fraud convictions of salespersons who repeated their employer's false representations, holding that "a securities broker cannot be expected to travel to the company vault to make sure his superiors have acquired sufficient collateral to back each investment sold." *Id.* at 1479. A salesperson's failure to independently verify employer representations does not constitute reckless disregard of the truth where

the salesperson is under no duty to investigate and there are no seriously suspicious circumstances alerting him to potential fraud. *Id.* The Complaint alleges no such duty for Mason and no such suspicious circumstances. It never alleges Mason had a desk or operational presence at GVI, received training from GVI, had access to GVI's financial records, or was integrated into GVI's mainstream business. Accepting the most innocent explanation consistent with the well-pleaded facts is precisely what *Iqbal* requires. 556 U.S. at 682.

This analysis applies equally to Count IV under Florida Statute section 517.301. As the Southern District of Florida confirmed in *Alna Capital Associates v. Wagner*, 532 F. Supp. 591, 597 (S.D. Fla. 1982), the scienter standard under section 517.301 is a negligence standard, satisfied by showing the defendant should have known the misrepresentations were false. But even under that less stringent standard, the Complaint fails because it never identifies what information was available to Mason that would have put a reasonable person in his position on notice of the fraud. The 'should have known' standard does not create a duty to investigate that Mason did not otherwise have. *Parker*, 839 F.2d at 1479. Without identifying the information Mason had access to, the Complaint's collective scienter allegation fails under both the federal and Florida standards.

**C. The Insurance Misrepresentation Allegation Fails Rule 9(b) and Is Attributed by the Complaint to Delgado, Not Mason.**

The insurance allegation illustrates the group pleading problem most clearly. The Complaint at ¶ 18 specifically attributes the Fidelity insurance representation to Delgado: "Delgado told Plaintiff that GVI was a great success and that any principal invested was insured through Fidelity." That is Delgado's statement. Mason is then tagged at ¶ 20 with the vague allegation that he represented the principal would remain "insured," without identifying what precise words he used, when, in what context, or how they differed from simply being present when Delgado made the specific Fidelity insurance representation. This single-word allegation fails every prong of the Eleventh Circuit's four-part Rule 9(b) test articulated in *Garfield*, 466 F.3d at 1262. The Complaint provides no basis for the inference that Mason knew whatever he said about principal protection was false.

**D. Count IV Also Fails Because Mason's Representations Were Not Independently Material.**

Section 517.301 requires that the misrepresentation be material to the investment decision. The Complaint never identifies how Mason's representations were independently material as distinct from the representations in the Joint Venture Agreement Plaintiff signed or the representations Delgado made directly. Where a commissioned referral contractor echoes representations already embodied in the contract the investor is about to execute, and Plaintiff itself warranted in Clause 3.6.4

of that Agreement that it was entering the arrangement based solely on its own analyses and decisions, Mason's repetition of those representations was not independently material to the investment decision. The Complaint's failure to identify any representation by Mason that went beyond what GVI itself represented in Exhibit A is a separate and distinct pleading deficiency specific to Count IV.

**II. Count VII Must Be Dismissed Because the Complaint's Collective 'Knew or Should Have Known' Allegations Do Not Satisfy Fraudulent Inducement's Actual Knowledge Requirement Under Florida Law.**

Count VII alleges fraudulent inducement under Florida common law. Fraudulent misrepresentation under Florida law requires "the representer's knowledge that the representation is false." *Specialty Marine & Industrial Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011). Negligent misrepresentation, by contrast, requires only that the defendant "should have known the representation was false." *Id.* These are distinct torts with distinct knowledge elements. *Id.* Plaintiff has pled the wrong one as to Mason.

The Complaint's scienter language throughout Counts I through VIII is uniformly "knew or should have known." Compl. ¶¶ 67, 85, 87, 101, 110. That is the negligent misrepresentation standard, not the actual knowledge standard required for fraudulent inducement. The Complaint never alleges Mason actually knew the representations he made were false at the time he made them in November 2024. Under *Iqbal*, the conclusory characterization of Mason's state of mind is entitled to

no presumption of truth. The Eleventh Circuit has confirmed that Florida law requires "actual knowledge of the underlying fraud, not merely allegations that certain red flags indicate a defendant should have known of the wrongdoing. *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014). Plaintiff has alleged negligent misrepresentation while labeling it fraudulent inducement. That mismatch is a fatal pleading deficiency specific to this count.

Count VII also fails as to the July 2025 second investment because fraudulent inducement is by definition limited to pre-contractual representations that induced Plaintiff to enter the Agreement. The Agreement was executed November 21, 2024. The Complaint contains no allegations of any inducing representations by Mason in connection with the July 2025 transaction of $1,000,000, which represents the majority of Plaintiff's capital. Count VII therefore fails entirely as to that transaction regardless of any other deficiency.

**III. Count III Must Be Dismissed Because Section 15(a) of the Exchange Act Provides No Private Right of Action and Because Mason Is Not a Broker-Dealer Subject to Independent Registration.**

Count III is brought exclusively against Mason and alleges he violated Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. section 78o(a)(1), by engaging in broker-dealer activities without registering with the SEC. This count fails as a matter of law on two independent grounds, either of which alone requires its dismissal.

**A. Section 15(a) Creates No Private Right of Action.**

Section 15(a)(1) is a regulatory provision requiring broker-dealers to register with the SEC. It creates no express private right of action. To find one by implication requires clear evidence of congressional intent to create a private remedy. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). The overwhelming majority of courts to consider the issue have held that Section 15 provides no private right of action. *Sheldon v. Vermonty*, 204 F.R.D. 679, 684-685 (D. Kan. 2001) (collecting cases). Courts examining Section 15 have uniformly reached this conclusion. *Yi v. GTV Media Group, Inc.*, No. 1:21-cv-02669 (S.D.N.Y. Jun. 18, 2021) (dismissing claim because Section 15 "provides no private right of action"); *Harold Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989) (Section 15(c)(1) "does not implicitly create a private cause of action" because "a broader private right already exists under section 10(b)").

The structure of the Exchange Act confirms this conclusion. Congress created express private rights of action in Section 9(e), Section 16(b), Section 18, and Section 20A. Its silence in Section 15(a) is intentional. When Congress creates express private rights in some provisions while remaining silent in others, courts should not imply private rights in the silent provisions. *Touche Ross*, 442 U.S. at 571-72. To the extent Plaintiff might argue rescission is available through Section 29(b), that vehicle is unavailable here because the Joint Venture Agreement does not

itself obligate Mason to register as a broker-dealer, and because Plaintiff has not pled any claim under Section 29(b). Count III should be dismissed on this ground alone.

### B. Mason Is Not a Broker or Dealer Subject to Independent Registration.

Even if Section 15(a) provided a private right of action, Count III independently fails because Mason does not fall within the class of persons the statute requires to register. The Exchange Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others," 15 U.S.C. section 78c(a)(4), and a "dealer" as "any person engaged in the business of buying and selling securities for such person's own account," *id.* section 78c(a)(5)(A). The Eleventh Circuit has confirmed that a dealer is distinguished from a trader who profits from portfolio appreciation rather than trade execution. *Securities and Exchange Commission v. Ibrahim Almagarby*, 92 F.4th 1306, 1315 (11th Cir. 2024). The Eleventh Circuit has also recognized that the determination of whether a person qualifies as a finder rather than a broker-dealer is "heavily fact-bound" and depends on whether the person engaged in activities such as analyzing financial needs, recommending financing methods, involvement in negotiations, or discussing details of securities transactions. *AST & Science LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1254 (11th Cir. 2025).

Mason engaged in none of those activities. The Complaint describes him as motivated by commissions paid by GVI for investment he secured, Compl. ¶ 20,

which is the economic profile of a referral agent, not a broker-dealer. He was not buying or selling securities for his own account. He was not effecting transactions for the account of others. He was not involved in negotiations, did not analyze financial needs, and made no investment recommendations beyond describing GVI's stated returns. The registration obligation, if any existed, ran to GVI as the employing entity, not to Mason individually as an associated person. To hold otherwise would expose every referral contractor in the country to individual Section 15(a) liability, a result plainly inconsistent with the statute's purpose.

## IV. Count VI Must Be Dismissed Because the Civil Conspiracy Allegation Is Conclusory, Implausible on Its Face, and Directly Refuted by Plaintiff's Own Exhibit.

Count VI alleges that all defendants "reached an agreement to defraud investors." Compl. ¶ 96. To state a claim for civil conspiracy under Florida law, a plaintiff must allege "(1) an agreement between two or more parties, (2) to do an unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed in furtherance of it." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 789 (11th Cir. 2014). Because the underlying unlawful act alleged is fraud, the Complaint must plead the conspiracy with particularity. *American United Life Insurance Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or more

parties agreed to commit fraud, the plaintiff must also plead this act with specificity."). Count VI fails as to Mason for five independent reasons.

First, the conspiracy allegation is entirely conclusory. The Complaint recites that Mason "reached an agreement" with the other defendants to defraud investors without identifying when this agreement was formed, what Mason specifically agreed to do, or what he knew at the time. Under *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013), this bare recital is entitled to no presumption of truth. The Eleventh Circuit has held that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and that formulaic recitations that defendants "agreed to the overall objective of the conspiracy" and "agreed to commit acts of fraud" are precisely the kind of allegations that fail under *Twombly* and *Iqbal*. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-1294 (11th Cir. 2010).

Second, the conspiracy allegation is facially implausible on the face of the Complaint itself. The Complaint acknowledges Mason was a commissioned sales representative, not a principal of GVI, who received no portion of Plaintiff's invested funds and no benefit beyond a referral commission. Compl. ¶ 20. It nowhere alleges Mason received any personal financial benefit from GVI's collapse, had any motive to perpetuate a fraud, or stood to gain anything from the scheme's continuation. A person in Mason's described position, earning a referral commission with no

operational stake in GVI's continued operation, does not plausibly agree to orchestrate the very scheme that would eliminate the investment product he was earning commissions to promote. The Eleventh Circuit requires allegations to be plausible, not merely conceivable. *Iqbal*, 556 U.S. at 680. That implausibility is compounded by the fact that Mason and his family lost approximately $7,000,000 in the same scheme, a loss entirely inconsistent with the knowing participation the conspiracy count requires.

Third, Plaintiff's own Exhibit C directly refutes the overt act component of the conspiracy count. The Complaint alleges a coordinated lulling campaign to prevent investor withdrawals. Compl. ¶¶ 97-98. But Mason's November 14, 2025 email shows he confirmed Plaintiff's withdrawal request the same day and took immediate steps to facilitate the exit through GVI's attorney: "I sent a letter to our attorney. It's a different process for closing an account. They will draft up a letter closing the account. Once I get that I'll send it over to you to sign." Compl. Ex. C. That is the conduct of someone who believed the arrangement was legitimate and worked to honor his client's request, not a co-conspirator obstructing investor withdrawals. When a complaint's exhibit contradicts its allegations, "the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Fourth, civil conspiracy under Florida law cannot be premised on negligent conduct. Logic and settled Florida law dictate that "a conspiracy to commit

negligence is a non sequitur." Individuals cannot agree to be negligent, and therefore negligence claims cannot serve as the basis for a civil conspiracy claim. *Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419-20 (S.D. Fla. 1996) (applying Florida law); *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984). As demonstrated in Arguments I and II above, the Complaint's fraud allegations against Mason amount to, at most, negligent repetition of employer representations. A conspiracy to be negligent is not actionable under Florida law.

Fifth, civil conspiracy is a dependent tort under Florida law requiring an actionable underlying wrong. *Posner v. Essex Insurance Company*, 178 F.3d 1209, 1217 (11th Cir. 1999) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong."). Because the fraud-based counts fail to state a plausible claim against Mason, the conspiracy count must fall with them.

## .**V. Counts II and V Must Be Dismissed Because the Complaint Fails to Allege Direct and Active Solicitation by Mason and Contains No Solicitation Allegations Whatsoever as to the Second and Larger Investment.**

Counts II and V are strict liability provisions that do not require proof of fraud and are evaluated under the basic plausibility standard. Both require that Mason sold or actively solicited the purchase of the securities at issue, motivated at least in part by a desire to serve his own financial interests. The Complaint's solicitation allegations fail for three independent reasons.

The Supreme Court held in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988), that Section 12(a)(1) liability "extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." The Court specifically rejected the substantial factor test: participation in surrounding events is not enough. *Id.* at 650-54. To constitute solicitation, a person must urge or persuade another to buy a particular security; that is the conduct the statute reaches, and it is precisely what the Complaint fails to allege against Mason. *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991). "Mere conclusory allegations that a defendant solicited the sale of stock and was motivated by financial gain to do so are insufficient to state a claim under Section 12." *In re CNL Hotels & Resorts, Inc.*, No. 04-cv-1231, 2005 U.S. Dist. LEXIS 51501, at *16 (M.D. Fla. Sept. 20, 2005). Florida courts apply the identical standard, requiring "some personal activity and involvement in the sale." *Beverly Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006).

**A. The Complaint Contains No Solicitation Allegations as to the Second and Larger Investment.**

The deficiency is most acute and most dispositive as to Plaintiff's second investment of $1,000,000 made on July 30, 2025, representing the overwhelming majority of Plaintiff's total capital. Compl. ¶ 43. The Complaint is entirely silent on Mason's role in that transaction. It identifies no communication, meeting, call, or

written solicitation by Mason in connection with the July 2025 investment. Under *Pinter* and its requirement of direct and active participation in the immediate sale, the complete absence of any well-pleaded solicitation allegations as to that investment independently requires dismissal of Counts II and V as they relate to that transaction.

**B. The Solicitation Allegations as to the First Investment Are Legally Insufficient.**

Even as to the November 2024 investment, the Complaint's solicitation allegations are legally insufficient. *Pinter* requires that the defendant have 'successfully solicited the purchase' and urge or persuade the investor to buy; a showing that depends on the facts alleged, not conclusory labels. 486 U.S. at 647. The Complaint never identifies a single act of urging or persuading Plaintiff to purchase. It never alleges Mason was involved in negotiations over the Agreement's terms, had any role in GVI's decision to accept Plaintiff as a partner, or did anything beyond conveying the investment arrangement in general terms. It never alleges Mason prepared or delivered any promotional materials, made any affirmative pitch, or took any step directed at bringing Plaintiff in as an investor. The Complaint's conclusory assertion that Mason "solicited" Plaintiff, Compl. ¶ 12, is precisely the type of bare legal conclusion that *Iqbal*, 556 U.S. at 679, instructs courts to disregard. Without well-pleaded factual allegations identifying what Mason said or did that

constitutes the urging or persuasion that *Pinter* requires, the solicitation count fails as to the first investment as well.

## VI. Count VIII Must Be Dismissed Because It Fails Rule 9(b)'s Particularity Requirement.

Count VIII asserts a FDUTPA claim, but the label does not determine the pleading standard. In *Alin Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025), the Eleventh Circuit held as a matter of first impression that Rule 9(b)'s particularity requirement applies to FDUTPA claims when those claims sound in fraud, and that this determination "depends on the factual allegations underlying a plaintiff's claim — not how the plaintiff styles his claim." The court further held that the most straightforward way to make this determination is by comparing the plaintiff's allegations to the elements of common law fraud: if the allegations "closely track the elements of common law fraud, then the plaintiff's claim sounds in fraud for purposes of Rule 9(b)." *Id*. at 1294.

Count VIII closely tracks every element of common law fraud. The Complaint alleges that Mason and the other defendants made false representations of material fact, that those representations were made with knowledge of their falsity, that they were intended to induce Plaintiff to invest, and that Plaintiff suffered injury in reliance on them. Compl. ¶¶ 110-112. Those are the elements of fraud, not merely unfair or deceptive trade practices. That Plaintiff does not style Count VIII as fraud,

and that FDUTPA does not require every element of fraud, does not insulate the claim from Rule 9(b). *Pop*, 145 F.4th 1285 (11th Cir. 2025) n.10 ("[T]he nature of the allegations supporting a claim — not the labels that a plaintiff uses — determines the application of Rule 9(b).").

Count VIII must therefore satisfy Rule 9(b)'s requirement that a plaintiff allege the "who, what, when, where, and how" of the fraudulent conduct, including "(1) the precise statements or misrepresentations made; (2) the time, place, and person responsible; (3) the content and manner in which those statements misled the plaintiff; and (4) what the defendants gained." *Id.* at 1296 (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). It fails on every prong. The Complaint never identifies what specific statements Mason made, when or where he made them, or how a person in his position could have known they were false. It lumps Mason together with Delgado and GVI in the same collective allegations that fail Rule 9(b) as to Counts I and IV, without specifying which defendant was responsible for which statement, when it was made, or how it caused Plaintiff's loss. *Pop*, 145 F.4th at 1285 (under Rule 9(b) a plaintiff cannot "lump together all of the defendants in allegations of fraud"). Count VIII must be dismissed.

## CONCLUSION

The Complaint against Jonathan Mason amounts to guilt by association. He was present at GVI. He earned a commission from it. **He also lost approximately $7,000,000 of his own money in it.** The Complaint describes his role as a commission-based sales representative with no operational stake in GVI and no access to its finances. The Complaint alleges a fraud. It does not allege Mason's fraud. It never goes beyond those facts to identify with particularity what Mason knew, why he knew it, or how a commissioned sales representative described as having no operational role at GVI could have known it.

Counts I and IV fail Rule 9(b) because the Complaint engages in impermissible group pleading, never identifies Mason's specific knowledge or scienter, and its collective knew or should have known allegations are insufficient under both the federal severe recklessness standard and the Florida negligence standard as applied to a salesperson with no duty to investigate absent suspicious circumstances. Count VII fails because those same allegations sound in negligent misrepresentation, not fraudulent inducement, which requires actual knowledge of falsity under Florida law. Count III fails as a matter of law because Section 15(a) provides no private right of action, as every court to consider the issue has held, and because Mason is not a broker-dealer. Count VI fails because it is conclusory, implausible on the face of the Complaint's own allegations about Mason's role,

directly refuted by Plaintiff's own Exhibit C, and cannot be premised on negligent conduct under Florida law. Count VIII fails under *Pop v. LuliFama*. Counts II and V fail because the Complaint contains no solicitation allegations as to the second and larger investment and the remaining allegations do not satisfy *Pinter*'s direct and active solicitation standard.

WHEREFORE, Defendant Jonathan Mason respectfully requests that this Court enter an Order dismissing all claims asserted against him in the Complaint with prejudice, and granting such other and further relief as the Court deems just and proper.

## Local Rule 3.01(g) Certificate

Prior to the filing of this Motion, undersigned counsel certifies that he/she conferred with counsel for Plaintiff in a good faith attempt to resolve the issues raised herein. The parties were unable to reach resolution.

Dated: April 13, 2026

Respectfully Submitted,

/s/ Mitchell D. Hansen
**MITCHELL D. HANSEN, ESQ.**
Florida Bar No. 1065929
E-mail: mitchell@jibraellaw.com
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
The Law Offices of Jibrael S. Hindi

1515 NE 26th Street
Wilton Manors, Florida 33305
Phone: 734-730-9959

*COUNSEL FOR DEFENDANT*
*JONATHAN MASON*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 13, 2026, a true and correct copy of the foregoing was electronically filed and served via CM/ECF upon all counsel of record.


/s/ Mitchell D. Hansen
**MITCHELL D. HANSEN, ESQ.**
Florida Bar No. 1065929
E-mail: mitchell@jibraellaw.com