UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PRESTIGE FLORIDA PROPERTY
INVESTMENT LLC,

      Plaintiff,

v.                              Case No.: 6:26-cv-00392

GOLIATH VENTURES, INC., a Florida
corporation; GOLIATH VENTURES, INC.,
a Wyoming corporation, CHRISTOPHER
DELGADO, an individual; JONATHAN
MASON, an individual; ERIC CLAYMAN,
an individual; and BLACKBLOCK
MANAGEMENT SOLUTIONS, LLC a/k/a
BLACKBLOCK MANAGEMENT SERVICES,
a Florida limited liability company,

      Defendants.

_____/

## MOTION TO DISMISS

Defendant, Blackblock Management Solutions, LLC a/k/a Blackblock Management Services (the "Defendant" or "Blackblock"), files its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and states as follows:

## I.    SUMMARY AND BACKGROUND OF THE CASE

1.    This case arises from an investment that Plaintiff, Prestige Florida Property Investment LLC, made with defendant Goliath Ventures, Inc. ("Goliath" or "GVI"). The cryptocurrency investment provided for a monthly four percent revenue plus the right to recover the invested capital. In November 2025, GVI

suspended all distributions to investors and has allegedly not been able to return a portion of Plaintiff's funds.

2.      GVI's Court appointed receiver filed for Chapter 11 bankruptcy protection on March 16, 2026. *See* DE 28.

3.      Dressed as a complaint for fraud, and using terms such as "fraud scheme" and "lulling", Plaintiff has is trying to recover its investment from third parties who owed Plaintiff no duty.

4.      Blackblock is alleged to be an independent third-party consultant, which was not a party to the investment agreement, gave no financial advice, did not receive any benefit from Plaintiff's investment, and was not part of the investment structure.

5.      The Complaint alleges that Plaintiff made its investments made in November 2024 ($300,000) and July 30, 2025 ($1,000,000).

6.      The Complaint's first mention of Defendant Blackblock Management Solutions, LLC is found in paragraph 44.  Plaintiff alleges that in "August 2025, to allay growing investor concerns, GVI distributed an "Independent Evaluation Report" dated August 13, 2025, authored by BMS (the "BlackBlock Report")." Complaint at ¶ 44.

7.      Critically, the BlackBock Report was dated two weeks **after** Plaintiff had made its last investment in GVI. It is impossible for Plaintiff to credibly allege that it was induced by or relied upon the BlackBock Report in determining whether

to invest in GVI, since the BlackBock Report did not exist when the Plaintiff made its investments in GVI.

8.     Moreover, Plaintiff even concedes that on October 16, 2025, GVI returned $600,000 of Plaintiff's investment. Complaint at ¶ 47.

9.     The Report explicitly disclosed that it was based on the information provided by GVI and that the investors were to make their own evaluations on the merits of the investment:

> **Disclaimer:** This report is based exclusively on the financial data and information provided to our team by Goliath Ventures. The accuracy and completeness of this report are dependent upon the accuracy and completeness of that information. Partners should not rely solely on this report and are advised to perform their own evaluation of the merits of any financial transaction.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain allegations of ultimate facts supporting each of the necessary elements of the claim. A motion to dismiss tests the legal sufficiency of the complaint. In ruling on a motion to dismiss, a trial court is limited to considering the four corners of the complaint along with the attachments incorporated into the complaint. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007)*. The plausibility standard requires more than the possibility that a defendant has acted unlawfully. The complaint must contain enough facts to move the claim across the

line from merely possible to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662. When deciding a motion to dismiss, the court does not assume that legal conclusions are true, even if they are stated as part of the claim. *Duty Free Ams., Inc. v. Estee Lauder Cos.,* 797 F.3d 1248 (11th Cir. 2015). Simply listing the elements of a claim or making vague, unsupported statements is not enough. *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)*. A complaint that only uses labels, conclusions, or a formulaic recitation of the elements of a claim shall be dismissed.

The Complaint contains two Counts against Blackblock: (i) Count VI for civil conspiracy for, allegedly, "lulling" the Plaintiff; and (ii) Count VIII for violation of the FDUTPA for allegedly authoring and distributing a fraudulent report to mislead investors. Both counts fail to state a claim against Blackblock.

### III.   ARGUMENT

a.   *The fraud and lulling allegations are not sufficiently pled to establish a claim for civil conspiracy*

Plaintiff's Count VI (Civil Conspiracy) should be dismissed because the Complaint does not adequately plead the elements of either the conspiracy or its underlying tort (fraud). In Florida, civil conspiracy is not itself an independent cause of action. "An actionable conspiracy requires an actionable underlying tort or wrong. This is to say that conspiracy is not a freestanding tort, but, rather, a cause of action for civil conspiracy exists only if the basis for the conspiracy is an independent

4

wrong or tort which would constitute a cause of action if the wrong were done by one person". *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1331 (11th Cir. 2014). Where the underlying tort is not adequately pled, the conspiracy claim necessarily fails with it.

The elements of fraud are: (i) a false statement concerning a material fact; (ii) the representor's knowledge that the representation was false; (iii) an intention that the representation induce another to act on it; and (iv) consequent injury to the party acting in reliance on the representation. *Harris v. Jayo (In re Haris)*, 3 F.4th 1339 (11th Cir. 2021).

The lulling doctrine, whether as an independent theory or related to fraud, requires that the "lulled party" was caused by the "lulling party's" conduct to <u>forbear from taking protective action that it would otherwise have take*n*</u>. The Eleventh Circuit has held that mere assurances, without more, are insufficient to establish lulling where the plaintiff was not genuinely prevented from acting. *Ramp Ops., Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1557 (11th Cir. 1986).

Furthermore, this Court has held that the lulling doctrine cannot excuse a party's own failure to investigate, and that there must be a close and causal connection between the defendant's statements and the plaintiff's delay. *W. Sizzlin Corp. v. Pinnacle Bus. Partners, LLC*, No. 6:10-cv-1452-Orl-31DAB, 2011 LX 10756 (M.D. Fla. Nov. 23, 2011).

In this case, the underlying tort alleged in the Civil Conspiracy charge against

5

Blackblock is fraud. Yet the Complaint fails to establish the elements of a cause of action for fraud.

*First*, the Complaint fails to identify any <u>false statement</u> in the Report. In effect, Plaintiff limits itself to assert that the Report was false and recites its conclusions: that Goliath "maintained an average collected balance of 115% or more of partner balances" and held "a sufficient position in reserves to satisfy any and all partner requests for withdrawal". However, it does not allege what Goliath's actual reserves were as of the date the Report was issued in August of 2025. These allegations are insufficient to establish a cause of action for fraud.

*Second*, the Complaint contains no factual allegation that Blackblock knew any statement in the Report to be false at the time it was made. There is no allegation that Blackblock had access to financial information contradicting its findings, no allegation of concealment on Blackblock's part, and no allegation of any communications between Blackblock and any co-defendant from which scienter could reasonably be inferred. In fact, the Report disclaims:

> **Disclaimer:** This report is based exclusively on the financial data and information provided to our team by Goliath Ventures. The accuracy and completeness of this report are dependent upon the accuracy and completeness of that information. Partners should not rely solely on this report and are advised to perform their own evaluation of the merits of any financial transaction.

*Third*, and probably the most obvious reason why Plaintiff's claim fails on its own terms, is that there is no causation between the alleged conspiracy/fraud and

Blackblock's actions. Plaintiff alleges that its investments were made in November 2024 ($300,000) and July 30, 2025 ($1,000,000). The Report, however, was not issued until August 13, 2025. A statement made *after* a decision to invest cannot have possibly induced the investment decision. Plaintiff cannot have relied on a document that did not yet exist at the time either of its investment decisions was made.

Recognizing this impossibility of pleading that the Report induced its investments, Plaintiff pivots to a "lulling" theory: that the Report induced Plaintiff to refrain from acting (refrain from withdrawing the funds already invested). Nevertheless, this theory is also unsustainable as Plaintiff concedes that it did withdraw funds after the Report was issued

As stated above, "lulling" requires that the plaintiff was induced by the defendant's conduct to "inaction". The Complaint affirmatively alleges the opposite. The following timeline outlines the facts alleged by the Complaint:

| DATE | EVENT | PARAGRAPH OF THE COMPLAINT |
|---|---|---|
| November 2024 | Plaintiff's First **Investment** ($300,000) | 21, 43 |
| July 30, 2025 | Plaintiff's Second **Investment** ($1 million) | 43 |
| August 2025 | Some "investors' concerns" appeared | 44 |
| August 13, 2025 | Blackblock issued its **Report** | 44 |
| September 2025 | Plaintiff's Request to **Withdraw** $600,000 | 47 |

| October 16, 2025 | Plaintiff's Request to **Withdraw** $600,00 was approved and funds are returned | 47 |
|---|---|---|
| November 14, 2025 | GVI Suspended Distributions | 48 |

Instead of investing more money or refraining from withdrawing, after receiving the Report, the Plaintiff did in fact act: Plaintiff withdrew a portion of its investment. Far from being precluded from acting, it requested to withdraw its initial investment and, in fact, was able to recover the money. If the Report had lulled Plaintiff into inaction, Plaintiff would not have requested a withdrawal weeks after the Report's issuance, let alone received a return of its investment. A plaintiff that successfully withdrew $600,000 from Goliath after the Report was issued cannot plausibly claim that the same Report prevented it from withdrawing the remainder.

Plaintiff has failed to adequately plead this count. The "lulling" theory is affirmatively contradicted by Plaintiff's own allegations: rather than forbearing from acting, Plaintiff withdrew $600,000 from GVI after the Report was issued. Count VI should therefore be dismissed as to Blackblock.

b. _The FDUTPA Claim is not adequately pled or within the Statute's reach_

Plaintiff's Count VIII (FDUTPA) should be dismissed because the Complaint does not adequately plead the elements of a viable FDUTPA claim.

A FDUTPA claim requires: (i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages. _Carriuolo v. GM Co._, 823 F.3d 977 (11th Cir.

8

2016); *see also Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

"Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claims when those claims sound in fraud." *See Pop v. Lulifama.com LLC*, No. 24-11048, 2025 WL 2177719, at *6–7 (11th Cir. Aug. 1, 2025). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

FDUTPA does not apply to conduct regulated under securities laws. In *Crowell v. Morgan Stanley Dean Witter Servs. Co., Inc.*, 87 F. Supp. 2d 1287, 1294 (S.D. Fla. 2000), while confronting the question of whether the FDUTPA would apply to securities transactions, the Southern District of Florida concluded that "the Florida Supreme Court, if confronted with the question whether the DPTA applies to claims arising from securities transactions, would hold that it does not". *See id*. Consequently, the Court dismissed the counts related to the FDUTPA.

The Complaint, alleges that Blackblock violated FDUTPA by "[c]ommissioning, authoring, and distributing the fraudulent 'Independent Evaluation Report'". The entirety of this allegation rests on the assertion that the Report was "fraudulent" and "designed to induce investors".

The cause of action is not properly pled and should be dismissed because: (i) it fails to comply with the requirements of Rule 9(b) (fraud standard); (ii) there is no causation between the report and the alleged damages (if any) suffered by the

investment; and (iii) Plaintiff cannot raise a FDUTPA claim while, at the same time, alleging the joint venture agreement is a security regulated by the Securities Act.

*First*, Plaintiff cannot present a fraudulent charge without stating the requirements of Rule 9(b). As stated above, the Complaint does not plead: (i) the specific "false" statement in the Report; (ii) any knowledge of falsity on Blackblock's report; or (iii) any facts from which either element can be inferred. Rule 9(b) does not permit fraud allegations to rest on conclusory assertions, even when framed as information and belief.

*Second*, causation is an essential element of a FDUTPA claim. *Carriuolo v. GM Co.*, 823 F.3d 977 (11th Cir. 2016); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) (causation requires that "an objectively reasonable person would have been deceived" by the alleged act). The "actual damages" recoverable under FDUTPA must flow from the deceptive act complained of. See *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354 (S.D. Fla. 2012) ("causation must be direct, rather than remote or speculative").

Plaintiff's own pleading that its investment was made before the existence of the Report and that GVI's suspension of distributions is the cause of Plaintiff's not receiving its investment breaks the chain of causation between the Report and Plaintiff's loss. Furthermore, Plaintiff's successful $600,000 withdrawal after the issuance of the Report confirms that the Report did not, in fact, impair access to Plaintiff's funds.

*Third,* Plaintiff has alleged, in Counts I to V, that the Joint Venture Agreement is an "investment contract" and therefore a "security". Plaintiff acknowledges that the Agreement expressly provides that it "shall not be considered an investment (…) or a security in any way whatsoever" but still argues and maintains its position that the Agreement's status is a security. FDUTPA does not apply to securities. Plaintiff cannot have it both ways. If the Agreement is a security, then it is exempt from FDUTPA.    Dismissal of Count VIII is therefore warranted.

WHEREFORE, Blackblock Management requests that this Court enter an order: (i) granting this Motion; (ii) dismissing the Complaint against Blackblock Management; (iii) and any such further relief as the Court deems proper.

Dated April 28, 2026.

> **DGIM Law, PLLC**
> *Attorneys for Blackblock Management*
> 2875 NE 191st Street, Suite 705
> Aventura, Florida 33180
> Telephone: (305) 763-8708
>
> By:    /s/ *Daniel Y. Gielchinsky*
>        Daniel Y. Gielchinsky, Esq.
>        Florida Bar No. 97646
>        dan@dgimlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this April 28, 2026, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, and that a true and

correct copy of the foregoing was served via CM/ECF electronic transmission upon

those parties who are registered with the Court to receive notifications in this matter.

By: /s/ *Daniel Y. Gielchinsky*
Daniel Y. Gielchinsky, Esq.

12