**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PRESTIGE FLORIDA PROPERTY INVESTMENT LLC,

Plaintiff,

v.

GOLIATH VENTURES, INC., et al.,

Defendants.
_________________________________/

**Case No. 6:26-cv-00392-GAP-RMN**

# DEFENDANT JONATHAN MASON'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

## INTRODUCTION

This motion is deliberately narrow. Jonathan Mason does not ask the Court to decide, through Rule 11, whether Goliath Ventures or Christopher Delgado committed fraud. He challenges specific Mason-related factual contentions for which Prestige Florida Property Investment LLC has not identified a reasonable factual basis: that Mason knew Goliath lacked insurance; knew Goliath lacked the capacity to return principal; withheld those facts with fraudulent intent; was at all times aware that Goliath was a Ponzi scheme; and knowingly agreed with others to defraud Prestige. He separately challenges the allegation that he delayed returning

Plaintiff's $600,000 withdrawal. *See* Compl. ¶¶ 27, 31-32, 47, 67-69, 85-87, 96-98, 101-02 (Doc. 1).

Those contentions do not follow merely from Mason's title, his investor-facing communications, or relationship-manager compensation. The Complaint identifies no Mason-specific document, communication, source of financial access, meeting, or other fact showing how Mason acquired the knowledge or reached the agreement attributed to him. It substitutes conclusions for evidence on the state-of-mind elements that separate a person who relayed information and serviced partner relationships from a person who knowingly joined a fraud.

Prestige also possessed material contrary information. Before Prestige invested $1 million, its principals asked Mason how much of his own money he had in Goliath, and Mason disclosed that his initial principal exceeded $3 million. The day before suit, Prestige's principal wrote Mason that Prestige was naming him because it had to "tell the story," while stating that Prestige's "real target is Chris and Goliath." After counsel received that writing no later than March 3, 2026, Prestige filed an opposition on May 14, 2026 that continued to advocate the challenged scienter theory and speculated that Mason's own substantial exposure gave him a motive to keep new money flowing. *See* Pl.'s Opp. at 5 (Doc. 63).

Rule 11 requires more. Mason serves this motion so Prestige and counsel may use the safe-harbor period to withdraw or appropriately correct the identified

allegations and the claims dependent on them. If they do not, Mason will seek the limited sanctions necessary to deter repetition and recover expenses directly caused by the violations. Because the action includes a private Exchange Act claim, Mason also preserves the statutory requirement that, upon final adjudication, the Court make the findings required by 15 U.S.C. § 78u-4(c).

## RELEVANT BACKGROUND

### **A.** The Complaint's Mason-Specific Knowledge and Conspiracy Allegations

The Complaint alleges that Mason was Goliath's Director of Partner Services and the primary solicitor for Prestige. Compl. ¶¶ 12, 15. It alleges that he discussed liquidity pools; represented that a 4% monthly return was "low" and that principal would remain liquid, accessible, and insured; and was motivated by compensation. *Id.* ¶ 20. Mason does not premise this motion on denying that he communicated with Prestige or received partner-services compensation.

The challenged leap appears in later paragraphs. Prestige alleges, without identifying the source of Mason's supposed knowledge, that Mason knew Goliath had no insurance when protection was discussed; knew Goliath lacked the capacity to return principal; withheld that information; acted with knowledge and intent; was at all times aware that the scheme was a Ponzi scheme; and agreed with the other defendants to defraud Prestige. *Id.* ¶¶ 27, 31-32, 67-69, 85-87, 96-98, 101-02. The

Complaint does not allege that Mason controlled Goliath's bank accounts, wallets, trading, financial statements, reserves, account valuations, or withdrawal decisions.

B. Prestige's Pre-Filing Knowledge

On July 28, 2025, Alex Reece wrote Mason that he and Shane Kennedy were considering investing $1 million and asked whether the funds were protected and how much Mason personally had invested. Mason answered that his initial principal exceeded $3 million. Mason is prepared to authenticate the full exchange and the financial records showing that this statement was materially accurate. The communication was important to Prestige's decision because Reece expressly said he took comfort from the fact that Mason was invested.

Prestige also signed the November 21, 2024, Joint Venture Agreement. Among other provisions, it described the liquidity-pool theory, the 4% monthly distribution, GVI's entitlement to remaining profit, withdrawal and reporting mechanics, principal-related provisions, and the parties' agreement that neither party was deemed to manage the other party's cryptocurrency. *See* Compl. Ex. A. Those provisions may be attacked as false representations by Goliath; they do not, without more, establish that Mason knew they were false.

On September 23, 2025, Alex Reece asked Mason to return the $600,000 Plaintiff had requested to withdraw. Plaintiff received their $600,000 the next day,

September 24, 2025. The Complaint alleges that "Defendants delayed payment, eventually remitting the sum on October 16, 2025." Compl. ¶ 47. Mason is prepared to authenticate the request and the transmittal records showing the funds were sent within twenty-four hours of the request, contrary to Plaintiff's allegations.

On February 17, 2026, at 1:50 p.m. Eastern Time - the day before Prestige filed the Complaint - Reece wrote Mason:

> "We named you in the lawsuit since we must tell the story of how we got involved in Goliath and any representations made. That said, our real target is Chris and Goliath. Our goal has been and will continue to be recouping our investment plus any cost we have incurred."

The communication does not, by itself, adjudicate Mason's liability. But it is directly relevant to why he was named and to whether Prestige and counsel reasonably investigated the Mason-specific knowledge and conspiracy allegations before filing.

**C.** Post-Filing Notice and Continued Advocacy

Counsel received the February 17 communication no later than March 3, 2026. Prestige nevertheless filed its May 14, 2026, opposition continuing to advocate the challenged scienter allegations. The opposition repeated that Mason knew Goliath lacked insurance and the capacity to return principal, withheld those facts, acted with knowledge and intent, and was at all times aware the enterprise was a Ponzi scheme. Pl.'s Opp. at 5 (Doc. 63).

The opposition then characterized Mason's reported seven-figure personal exposure as "motive, not an exculpation," speculating that a sales agent with money at risk would have reason to keep new funds flowing to delay collapse. *Id.* That theory does not identify evidence that Mason knew of a collapse, knew that new funds were needed to delay it, or acted to protect his position. It converts an opposing inference into an accusation without identifying the factual bridge Rule 11(b)(3) requires.

## LEGAL STANDARD

By presenting a pleading or later advocating it, counsel certifies, after an inquiry reasonable under the circumstances, that the paper is not presented for an improper purpose and that factual contentions have evidentiary support or, if specifically identified, likely will have support after reasonable investigation or discovery. Fed. R. Civ. P. 11(b)(1), (3). A Rule 11(c) motion for sanctions must be made separately, describe the specific conduct challenged, and be served before filing so the challenged matter can be withdrawn or appropriately corrected. Fed. R. Civ. P. 11(c)(2).

The Eleventh Circuit asks whether the challenged position is objectively frivolous and, if so, whether the signer should have known that after a reasonable inquiry. *Gulisano v. Cohen*, 34 F.4th 935, 942 (11th Cir. 2022); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Counsel cannot simply accept conclusory client

assertions without questioning the client, examining available information, or contacting sources who could shed light on the claim. *See Worldwide Primates v. McGreal*, 87 F.3d 1252, 1254-55 (11th Cir. 1996) (affirming sanctions on an attorney who accepted his client's assertions without questioning the client about damages, obtaining or examining any data, or contacting a third party who could shed light on the claim's validity). The duty also applies when counsel later advocates a claim after learning facts that undermine it. *See Gulisano*, 34 F.4th at 942 ("In addition, an attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court.").

If a violation of Rule 11 is found, the Court may impose a sanction limited to what suffices to deter repetition. Fed. R. Civ. P. 11(c)(1), (4). Monetary sanctions may not be imposed against a represented party for a Rule 11(b)(2) violation, but a party may be responsible for factual misrepresentations or improper-purpose conduct under Rule 11(b)(1) and (3). Fed. R. Civ. P. 11(c)(1), (5)(A). Separately, the PSLRA requires specific Rule 11 findings upon final adjudication of a private Exchange Act action and requires sanctions if the Court finds a violation. 15 U.S.C. § 78u-4(c)(1)-(3).

# ARGUMENT

## I. Prestige Has Not Identified a Reasonable Factual Basis for Alleging That Mason Knew the Protection Information Was False.

The Complaint alleges both that protection information was communicated and that Mason knew it was false. The first proposition does not establish the second. Paragraph 27 states the conclusion that Mason knew Goliath lacked insurance; it does not allege when he learned that, who told him, what document he saw, what access he had, or what circumstance made the information obviously false to him.

The contemporaneous materials point the other direction. The JVA contained principal-related protection language. Mason's July 2025 response referred specifically to a fidelity bond and Relm Insurance, rather than inventing an unidentified assurance. A later BlackBlock partner report - expressly limited to information provided by Goliath - represented that sufficient reserves existed for withdrawals. None of those materials proves Goliath was legitimate. They do demonstrate why Prestige needed Mason-specific evidence before alleging he knew the protection information was false.

Prestige's May 14, 2026, opposition still identifies no such evidence. It merely repeats the conclusion. Continued advocacy of a knowledge allegation without identifying its factual source is precisely what Rule 11(b)(3) requires counsel to reconsider during the safe-harbor period.

### II. The Allegation That Mason Knew Goliath Could Not Return Principal Is Unsupported by Mason-Specific Facts.

Paragraphs 31 and 32 allege that Mason knew Goliath lacked the capacity to return principal and withheld that fact. Yet the Complaint alleges no access by Mason to Goliath's actual finances, bank accounts, wallets, reserve information, trading records, or withdrawal approvals. It attributes the investment agreements to Goliath, the BlackBlock report to BlackBlock, and the operation of the enterprise to Delgado and Goliath. It does not allege how Mason supposedly acquired the contrary knowledge attributed to him.

The allegation cannot be rescued by saying Mason transmitted distributions or received compensation. A ministerial payment path or relationship-servicing role does not show who calculated balances, who controlled source funds, or whether Mason knew the balances were fictitious. If Prestige possesses evidence that Mason controlled those functions or knew Goliath could not honor withdrawals, it must identify the evidence. If it does not, the categorical knowledge allegation must be withdrawn or corrected.

### III. The Ponzi-Knowledge and Conspiracy Allegations Are Conclusions, Not Supported Mason-Specific Contentions.

Paragraphs 69 and 87 allege that Mason was "at all times aware" that the enterprise was a Ponzi scheme. Paragraphs 96 through 98 allege an agreement to

defraud and describe all defendants collectively. The Complaint does not identify a Mason communication acknowledging fraud, a meeting at which Mason agreed to fraudulent conduct, a direction by Mason to conceal facts, or an overt act showing he joined an unlawful agreement with knowledge of its purpose.

The known opposing facts made inquiry especially important. Reece asked Mason how much he personally had invested before Prestige added $1 million. Mason disclosed more than $3 million, and Prestige expressly relied on that fact as comfort. That does not make liability impossible, but it is a powerful contrary circumstance that had to be investigated before alleging that Mason knowingly joined a scheme that exposed his own substantial capital.

Prestige's later theory - that Mason's exposure itself motivated him to prolong a fraud - is speculation unless supported by evidence that he knew a fraud existed, knew a collapse was imminent, and sought new funds to postpone it. Neither the Complaint nor the May 14, 2026, opposition identifies that evidence.

## IV. Compensation and an Investor-Facing Role Do Not Supply the Missing Scienter or Agreement.

Mason does not ask the Court to infer innocence merely because his role was described as partner services or because the compensation was characterized as relationship-management compensation. He acknowledges compensation existed. The Rule 11 defect is the opposite inference Prestige draws: that percentage-based

compensation itself establishes knowledge of false protection information, knowledge of insolvency, or agreement to join a Ponzi scheme.

Compensation can be relevant to motive, but motive is not knowledge and is not an agreement. Prestige needed facts showing that Mason knew the representations were false or knowingly assisted an unlawful plan. The allegations at issue omit that bridge and rely instead on title, compensation, and hindsight after Delgado's conduct became public.

**V.** The Reece Communication Required a Meaningful Pre-Filing Inquiry and, After March 3, a Reassessment of Continued Advocacy.

Reece's February 17 email is not treated here as a concession that every potential claim against Mason was frivolous. It is probative because Prestige's principal expressly distinguished Mason from the "real target" and explained that Mason was being named to "tell the story." That message, sent the day before filing, required counsel to ask what Mason-specific evidence supported accusations of knowing fraud and conspiracy.

Even if counsel did not see the email before filing, they received it by March 3. Rule 11 reaches "later advocating" a paper. *See Gulisano*, 34 F.4th at 942. The May 14 opposition did not identify new Mason-specific evidence. It repeated the challenged allegations and added a speculative theory about Mason's own exposure.

Under *Gulisano*, counsel had a duty to reassess the factual basis before advocating the claims again.

The circumstances also implicate Rule 11(b)(1). A plaintiff may name a person necessary to a viable claim even if another defendant is the primary target. But naming someone to tell a narrative, while lacking factual support for that person's alleged knowledge and agreement, uses the pleading for a purpose other than the legitimate adjudication of supported claims against that person. Prestige's own words therefore matter when assessed together with the unsupported state-of-mind allegations.

## VI. Prestige Also Advanced a Timing Allegation That the Record Contradicts.

Paragraph 47 of the Complaint alleges that Defendants "delayed payment" on Plaintiff's $600,000 withdrawal request and did not remit the funds until October 16, 2025. Compl. ¶ 47. The parties' own September 2025 communications do not support that timeline. Reece asked Mason to return the $600,000 on September 23, 2025, and Plaintiff received the funds the next day, September 24, 2025.

Rule 11(b)(3) required a reasonable factual basis before advancing a specific, verifiable timing allegation that Prestige's own records contradict. Prestige needed no discovery to test this contention; it needed only to review the September 2025 exchange already in its possession, or ask Mason, before alleging a three-week delay

that did not occur. Mason is prepared to authenticate the request and the transmittal records establishing the one-day turnaround.

## **VII.** The Safe-Harbor Cure and Any Sanction Should Be Narrow and Deterrent.

Mason seeks correction, not satellite litigation for its own sake. During the safe-harbor period, Prestige can cure the violation by dismissing the claims against Mason or by amending the Complaint to withdraw the unsupported Mason-specific allegations in paragraphs 27, 31-32, 69, 87, 96-98, and 101-02 and any claims that depend on those allegations. Mason is willing to confer about an appropriate correction.

If Prestige and counsel decline to cure, Mason will ask the Court for findings under Rule 11(b)(1) and (3), an order directing withdrawal or correction of the unsupported contentions, reasonable attorneys' fees and expenses directly caused by the violations and this motion, and any additional deterrent sanction the Court deems proportionate. Mason does not seek a Rule 11(b)(2) monetary sanction against Prestige as a represented party. He seeks party sanctions only to the extent Prestige is responsible for factual or improper-purpose violations under Rule 11(b)(1) and (3).

## CONCLUSION

The Complaint accuses Mason of knowledge and agreement that it does not support with Mason-specific facts. Prestige knew that Mason had disclosed substantial personal exposure, and its principal wrote on the eve of filing that Mason was being named to tell the story while Chris and Goliath were the real target. After counsel received that communication, they continued to advocate the same state-of-mind allegations without identifying the missing factual basis. Rule 11(c)(2) now gives Prestige and counsel an opportunity to correct the pleading before this motion is filed.

WHEREFORE, if the challenged allegations and claims are not withdrawn or appropriately corrected during the safe-harbor period, Defendant Jonathan Mason respectfully requests that the Court: (1) determine that the identified conduct violated Rule 11(b)(1) and/or Rule 11(b)(3); (2) direct withdrawal or correction of the unsupported contentions; (3) award Mason the reasonable attorneys' fees and expenses directly caused by the violations alleged herein and the motion, to the extent permitted by Rule 11(c)(4) and 15 U.S.C. § 78u-4(c); and (4) impose any other nonmonetary or monetary sanction necessary and proportionate to deter repetition.

Respectfully submitted,

/s/ Samuel J. Awad
SAMUEL J. AWAD, ESQ.
Florida Bar No. 1058426
samuel@jibraellaw.com
JIBRAEL S. HINDI, ESQ.
Florida Bar No. 118259
jibrael@jibraellaw.com
The Law Offices of Jibrael S. Hindi
1515 NE 26th Street
Wilton Manors, Florida 33305
Telephone: (561) 379-9248
Counsel for Defendant Jonathan Mason

## CERTIFICATE OF SERVICE

I certify that on August 17, 2026, a true and correct copy of this motion was served for purposes of Federal Rule of Civil Procedure 11(c)(2) on counsel for Plaintiff by a method authorized under Federal Rule of Civil Procedure 5.

/s/ Samuel J. Awad
SAMUEL J. AWAD, ESQ.