UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PRESTIGE FLORIDA PROPERTY INVESTMENT, LLC,

Plaintiff,

v. Case No.: 6:26-cv-00392-GAP-RMN

GOLIATH VENTURES, INC., FLORIDA CORPORATION; GOLIATH VENTURES, INC., WYOMING CORPORATION; CHRISTOPHER DELGADO, INDIVIDUAL; JONATHAN MASON, INDIVIDUAL; ERIC CLAYMAN, INDIVIDUAL; AND BLACKBLOCK MANAGEMENT SOLUTIONS, LLC, FLORIDA LIMITED LIABILITY COMPANY;

Defendants,
_______________________________/

## ORDER

This matter came before the Court on Defendants' Motions to Dismiss. *See* Doc. 44; Doc. 45; Doc. 54. Along with considering Plaintiff's Responses in Opposition, the Court heard argument on the Motions at an October 22, 2026, hearing. Doc. 63; Doc. 64; Doc. 65; *see also* Doc. 84.

### I. Background

On February 18, 2026, Plaintiff Prestige Florida Property Investment, LLC

("Plaintiff") filed a nine-count Complaint against Defendants Goliath Ventures, Inc. (FL), Goliath Ventures, Inc. (WY) (together, "GVI"),[1] Christopher Delgado ("Delgado"), Jonathan Mason ("Mason"), Eric Clayman ("Clayman"), and Blackblock Management Solutions, LLC ("BMS") (collectively, "Defendants") alleging a slew of claims arising from an alleged Ponzi scheme orchestrated by Defendants. *See generally* Doc. 1.

Plaintiff alleges that Defendants "[m]asquerad[ed] as a 'Joint Venture' to evade federal and state securities registration requirements" while operating a "massive cryptocurrency Ponzi scheme." *Id.*, ¶ 1. They solicited "millions of dollars from investors, including Plaintiff by promising 'guaranteed' monthly returns of 4% (48% annually) generated through purported cryptocurrency 'liquidity pools.' " *Id.* Mason, who "solicited Plaintiff to invest in GVI[,]" purportedly provided inside information about the company, assuring Plaintiff that the promised 4% returns would be on the "low" end and that its principal investment was "insured." *Id.*, ¶¶ 15-21.

The Complaint alleges that "Defendants engaged in a concerted 'lulling' campaign" as the scheme collapsed in late 2025, fraudulently assuring Plaintiff (and other investors) that they maintained reserves in excess of $100 million and that

[1] On March 17, 2026, GVI filed a Suggestion of Bankruptcy, and the case was subsequently stayed as to those defendants pursuant to 11 U.S.C. § 362. Doc. 28; Doc. 30.

"legacy banking infrastructure" was to blame for their delayed withdrawals. *Id.*, ¶ 3. On August 13, 2025, GVI allegedly commissioned BMS to distribute an "Independent Evaluation Report" (the "Report") which "falsely claimed that GVI 'maintained an average collected balance of 115% or more of partner balances' " and could satisfy "any and all" withdrawal requests. *Id.*, ¶¶ 44-45. Clayman, who is also alleged to have played a role in drafting the underlying "Joint Venture" agreement (the "Agreement"), participated in a November 18, 2025, call with Plaintiff where he provided assurances that "he had personally reviewed the balances and that GVI had either $100-200 million dollars left over" and "discouraged Plaintiff from pressing for a return of funds[.]" *Id.*, ¶¶ 22-24, 53. Plaintiff seeks the return of its remaining principal investment, totaling approximately $700,000, along with 4% monthly returns that GVI has not paid. *Id.*, ¶¶ 2, 122.

On April 10, 2026, Clayman filed a Motion to Dismiss, arguing that he was a victim of the Ponzi scheme and that Plaintiff's Complaint does not allege his liability. *See* Doc. 44. Mason filed his Motion to Dismiss on April 13th, advancing similar arguments that he, too, was a victim of the scheme and that the Complaint does not plead that he had knowledge of his co-Defendants' intentions. *See* Doc. 45. On April 28th, BMS filed its Motion to Dismiss based on the contention that it cannot be liable for Plaintiff's claims because its only involvement came after

Plaintiff was fully invested in the Ponzi scheme. Doc. *See* Doc. 54. Plaintiff has Responded to each Defendant's Motion, leaving this matter ripe for adjudication. *See* Doc. 63; Doc. 64; Doc. 65.

**II. Legal Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g., Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678,

683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## III. Analysis

As a threshold matter, Plaintiff "voluntarily dismissed" Count III against Mason in its Response. Doc. 63 at 2. It likewise requested that the Court dismiss Counts II and V as to Clayman without prejudice. Doc. 64 at 2. However, Fed. R. Civ. P. 41(a)(1)(A) only allows a plaintiff to dismiss an *action*. "A plain reading reveals that the Rule does not authorize the voluntary dismissal of individual claims; rather, the Rule requires that a plaintiff dismiss the entire action."[2] *In re Esteva*, 60 F.4th 664, 675 (11th Cir. 2023). Accordingly, the Court will construe Plaintiff's requests as a concession to Mason's Motion to Dismiss Count III and Clayman's Motion to Dismiss Counts II and V. Mason and Clayman's Motions are accordingly hereby **GRANTED in part** as to those Counts**.**

Remaining for the Court's disposition are Defendants' arguments that

[2] The same is true of Rule 41(a)(2), which allows dismissal of an "action" by court order. *See Rosell v. VMSB, LLC*, 67 F.4th 1141, 1144 (11th Cir. 2023) (noting that "a Rule 41(a)(2) dismissal can only be for an entire action, and not an individual claim").

Plaintiff's Complaint fails to state a claim (1) against Mason in Counts I, II, IV, V, and VII, and (2) against Mason, Clayman, and BMS in Counts VI and VIII.

**A. Counts I, IV, & VII Against Mason—Securities Fraud & Fraudulent Inducement**

Count I of the Complaint alleges that Mason violated § 10(b) of the Securities Exchange Act of 1934 (the "Act") (codified at 15 U.S.C. § 78j(b)), which protects investors from fraud, and Rule 10b-5 (an SEC regulation), which prohibits fraudulent schemes and making untrue statements of material facts, omitting material facts, or engaging in any scheme to defraud. *See* Doc. 1, ¶¶ 63-71. The same is generally true of Count IV's allegations under the analogous Florida statute. *See id.*, ¶¶ 81-88; Fla. Stat. § 517.301. Count VII alleges that Mason fraudulently induced Plaintiff to invest in the Ponzi scheme. *Id.*, ¶¶ 100-104. Because Mason primarily argues that the Complaint does not sufficiently plead scienter in all of these claims, the Court addresses his arguments together. *See* Doc. 45 at 7-13.

First, Mason's group pleading contentions fail; the Complaint plainly identifies each Defendant's alleged role—including Mason's—in the Ponzi scheme and attributed specific conduct to specific individuals. *See* Doc. 1, ¶¶ 12, 15, 16, 17, 20, 27, 31. The particularity Plaintiff has provided is more than sufficient to withstand Mason's 12(b)(6) motion. *See id.*; *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) ("Rule 9(b) is satisfied if the complaint sets forth (1)

precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.").

Indeed, the Eleventh Circuit has stated plainly that, "[f]or claims brought under the Exchange Act, including [] claims under Section 10b and Section 20a, the complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.' " *Id.* (quoting 15 U.S.C. § 78u–4(b)(1)). Here, the Complaint sufficiently details Mason's specific statements (which include reassuring Plaintiff about high returns and insured principal) and why they were misleading; his prominent conspiratorial role soliciting Plaintiff's investment; when the statements were made ("in or around November 2024"); and that he received commissions for his solicitation work. *See* Doc. 63 at 3-4, 6; Doc. 1, ¶¶ 12, 15, 16, 17, 20, 27, 31, 71; *see also Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

Mason next contends that the Complaint's scienter allegations are defective. Doc. 45 at 9-10, 12-13. But Rule 9(b) clearly states that "[m]alice, intent, **knowledge**,

and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Mason's quibbles over whether the Complaint adequately pleads scienter ignore the plain allegations and the law. *See, e.g.*, Doc. 1, ¶¶ 27 ("Delgado and Mason were also aware that GVI did not have the capacity to return all principal invested when they solicited Plaintiff to execute the Agreement and invest in GVI and withheld this material fact from Plaintiff."), 87 ("Each of Delgado, GVI, and Mason acted with knowledge and intent, at all times aware that their scheme was fraudulent and constitute[d] a Ponzi Scheme.").[3] Considering these allegations, Mason's arguments require no further analysis—Plaintiff has "accompanied [its] complaint with sufficient detail of the underlying acts that allegedly constitute fraud to provide [D]efendants with notice of the precise misconduct with which they are charged."[4] *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1187 (11th Cir. 2025).

---

[3] In support of his contention, Mason suggests that a case which overturned a **criminal conviction** for broker-salesmen and involved a fundamentally distinguishable factual context presents "a similar situation" to the instant matter. *See United States v. Parker*, 839 F.2d 1473 (11th Cir. 1988) (emphasis added). It does not. Most conspicuously, the pleading standards for a 12(b)(6) motion bear no resemblance to the beyond-a-reasonable-doubt standard required to sustain a criminal conviction. *See supra* at sec. II. Moreover, Plaintiff's Complaint does not allege Mason is a mere employee of GVI like the broker-salesmen were in *Parker*—it alleges he held a director-level leadership position (the Director of Partner Services) and that he played a knowing role in the Ponzi scheme. Doc. 1, ¶¶ 12, 87. *Parker* does not support dismissal of Plaintiff's claims.

[4] These conclusions apply with equal force to Count VII's fraudulent inducement claim. As demonstrated, the Complaint clearly alleges the fraudulent inducement element that "the representer[ has] knowledge that the representation is false." *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011).

Mason's contention that the Complaint also fails to allege the materiality of his misrepresentations (required under Fla. Stat. § 517.301(1)(a)(2.)) to Plaintiff's investment decision is likewise misguided. *See* Doc. 45 at 11-12; Doc. 1, ¶ 27. The Complaint plainly alleges that Mason's statements providing assurance that the monthly 4% distribution promised was "low" and that Plaintiff's principal was "insured" went beyond what was in the Agreement and were made to induce Plaintiff to invest in the scheme.[5] *See* Doc. 1, ¶¶ 27-32; *compare, e.g.*, Doc. 1-1 at 7 *to* Doc. 1, ¶ 20. These statements, along with others made by Mason, Delgado, and GVI, were explicitly alleged to have *materially* induced Plaintiff to invest. *See, e.g.*, Doc. 1, ¶¶ 27-32.

Consequently, Plaintiff's claims in Counts I, IV, and VII satisfy the necessary pleading standards. *See Iqbal*, 556 U.S. at 680.

**B. Counts II & V Against Mason—Sale of Unregistered Securities**

Mason argues that liability pursuant to these counts requires unpled allegations that he "actively solicited the purchase of the securities at issue, motivated at least in part by a desire to serve his own financial interests." Doc. 45 at 19 (citing *Pinter*). The Supreme Court held in *Pinter v. Dahl* that liability under §

[5] While the Agreement provided assurances that GVI "guarantees the principal amount held[,]" it does not state anything further regarding insurance coverage or policies. *See generally* Doc. 1-1 at 8. Though the Complaint states that the Agreement promised that principal investments "were insured[,]" it provided no citation and, where the Agreement in Exhibit 1 contradicts the pleading, "the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

12(a)(1) "extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." 486 U.S. 622, 647 (1988). But the act of "solicitation" is broadly applied and need not even be personal. *Wildes v. BitConnect Intl. PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) ("Broadly disseminated communications also can convey a solicitation—indeed, they are consistent with the longstanding interpretation of the term.").[6]

Plaintiff has alleged it was actively solicited by Mason (including through his statements that "a return of 4% per month was considered 'low' for GVI's strategy and that the principal would remain liquid, accessible, and insured"), how those statements misled Plaintiff, and how Mason was motivated by a desire to earn commissions from GVI based on the amount of investments he secured. *See* Doc. 63

---

[6] As the Eleventh Circuit recently explained:

> Technology has opened new avenues for both investment and solicitation. Sellers can now reach a global audience through podcasts, social media posts, or, as here, online videos and web links. But under the district court's cramped reading of the Securities Act, a seller who would be liable for recommending a security in a personal letter could not be held accountable for making the exact same pitch in an internet video—or through other forms of communication listed as exemplars in the Act, like circulars, radio advertisements, and television commercials. *See* 15 U.S.C. §§ 77e(a)(1), 77b(a)(10). That makes little sense. **A seller cannot dodge liability through his choice of communications—especially when the Act covers "any means" of "communication."** *Id.* § 77e(a)(1). We decline to adopt an interpretation that both contradicts the text and allows easy end-runs around the Act.

*Wildes v. BitConnect Intl. PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (emphasis added).

at 10-11; Doc. 1, ¶¶ 15-20. The Complaint even specifically alleges that Mason "acted as the primary solicitor for the investment." Doc. 1, ¶ 12.

Despite Mason's contention that Plaintiff's Complaint does not "identif[y] a single act of urging or persuading Plaintiff to purchase[,]" the passages cited above constitute exactly that—the Complaint also details that Mason's "routine" references to Clayman's involvement as "corporate counsel" were part of his solicitation. *See* Doc. 1, ¶ 17. These allegations are sufficient to state a claim for Mason's liability under Rule 12(b)(6) and § 12(a)(1). *See Pinter*, 486 U.S. at 647; *Wildes*, 25 F.4th at 1346.

**C. Count VI Against Mason, Clayman, and BMS—Civil Conspiracy**

"A civil conspiracy has the following elements: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy."[7] *Gordon v. Bethel*, 359 So. 3d 802, 810 (Fla. Dist. Ct. App. 2023).

Clayman argues that the Complaint's allegations that he and his

---

[7] Because the underlying unlawful act here is fraud, Defendants are correct that Rule 9(b) applies to those allegations. Doc. 44 at 9; Doc. 45 at 16-17; Doc. 54 at 4-8. But, unlike in the cases Defendants rely upon, the Court here has already concluded that the Complaint's fraud allegations satisfy Rule 9(b)'s requirements. *See supra* at sec. III(A)-(B); *compare to Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) ("Thus, as this Court has noted, a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim.").

codefendants "reached an agreement to defraud investors" are conclusory and rendered implausible by his own investment in GVI. Doc. 44 at 9-10. Mason echoes the same complaints, citing to cases like *Twombly* and *American Dental Ass'n* for support. *See* Doc. 45 at 17. But both Clayman and Mason misinterpret these (and other) precedential holdings.

*Twombly* expressly held that stating a claim for conspiracy "requires a complaint **with enough factual matter (taken as true) to suggest that an agreement was made**." 550 U.S. at 556 (emphasis added). But in cases like *Twombly* and *American Dental Ass'n*, the facts plead "just as easily suggest[ed] independent, lawful action." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010); *Tombly*, 550 U.S. at 567-68 ("In a traditionally unregulated industry with low barriers to entry, sparse competition among large firms dominating separate geographical segments of the market could very well signify illegal agreement, but here we have an obvious alternative explanation. In the decade preceding the 1996 Act and well before that, monopoly was the norm in telecommunications, not the exception.").

By contrast, Plaintiff's Complaint describes a Ponzi scheme, fraudulent from top to bottom—its sufficiently particularized allegations that Mason, Clayman, and BMS played intricate roles in the scheme do not share the kind of readily apparent alternative explanation that supported the holdings of *Twombly* and *American Dental*

*Ass'n*. *See generally* Doc. 1. Mason was "the primary solicitor for the investment[;]" Clayman allegedly drafted the Agreement; and BMS issued the Report (whose findings were reinforced by Clayman) to reassure investors at a crucial time when the scheme was beginning to show cracks—there is no obvious alternative explanation for this conduct and Defendants have offered none apart from their unsupported cries of ignorance, which must yield to Plaintiff's well-pleaded allegations at this stage of the case.[8] *See* Doc. 1, ¶¶ 12, 22, 24; Docs. 1-1 through 1-7; *see also Jackson*, 21 F.3d at 1534.

Therefore, the instant matter more closely resembles cases like *Otto Candies, LLC*, where the Eleventh Circuit recognized that "Rule 9(b)'s pleading standards should be relaxed in appropriate circumstances to aid those alleging prolonged multi-act schemes—like the one alleged here—if the plaintiff alleges at least some examples to lay a complete foundation for the rest of his allegations." 137 F.4th at 1187. The allegations in Plaintiff's Complaint have unquestionably laid that

---

[8] Defendants argue from the standpoint that Plaintiff's case is not plausible because they, too, are victims. But they ignore the eminent plausibility which underlies the Complaint's thorough allegations: the suggestion that a pool of money which is not at risk will earn a guaranteed return (of any amount) is essentially an economic impossibility. Moreover, as Plaintiff recognized, the entanglement of Mason and Clayman's personal funds in the alleged Ponzi scheme only provides further support for their motivation to prolong the fraud. *See* Doc. 63 at 5. Plaintiff's allegations that Mason, Clayman (who is an attorney), and BMS had knowledge of this fact while they participated in this alleged scheme with GVI does not strain credibility. The Court obviously does not regard these allegations as proven, but it is axiomatic that Plaintiff "need not prove [its] case on the pleadings[.]" *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010).

foundation and exceeded the threshold of plausibility. *See id.*; *Iqbal*, 556 U.S. at 680.

**D. Count VIII Against Mason, Clayman, and BMS—FDUPTA Claim**

"A FDUTPA [Florida Deceptive and Unfair Trade Practices Act] claim requires allegations of (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Barrish v. Interiors by Steven G., Inc.*, 435 So. 3d 1134, 1139 (Fla. Dist. Ct. App. 2026) (internal quotations and citations omitted). Under FDUTPA, an "unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal quotations and citations omitted). Indeed, Florida courts have recognized that deception occurs if there is a "representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment[.]" *Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000).

Plaintiff has plainly—and with particularity to each—plead that Mason, Clayman, and BMS's participation in the alleged Ponzi scheme involved conduct which falls within FDUPTA's penumbra. *See, e.g.*, *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F. Supp. 2d 1331, 1336-38, 1344-47 (M.D. Fla. 2013). The Complaint's allegations that Mason (along with Delgado and GVI) solicited Plaintiff's investment through fraudulent inducement, that Clayman undertook lulling actions (*ie.* personally vouching for Goliath's financial balances in

reassurances to Plaintiff and other investors), and that BMS distributed the fraudulent financial Report to lull investors constitute precisely the class of deceptive acts contemplated by FDUPTA. *See Millennium*, 761 So. 2d at 1263; *TemPay, Inc.*, 945 F. Supp. 2d at 1344-47.

* * *

Apart from the counts which Plaintiff has conceded, as noted above, Mason, Clayman, and BMS's motions to dismiss are due to be denied.

**IV. Conclusion**

Accordingly, it is **ORDERED** that:

1. Mason's (Doc. 45) Motion to Dismiss is hereby **GRANTED in part** as to Count III, which is dismissed without prejudice, and **DENIED in all other respects**;
2. Clayman's (Doc. 44) Motion to Dismiss is hereby **GRANTED in part** as to Counts II and V, which are dismissed without prejudice, (against Clayman ONLY) and **DENIED in all other respects**;
3. BMS's (Doc. 54) Motion to Dismiss is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 2, 2026.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party